## LLANO DEL RIO CO. OF NEVADA v. ANDERSON-POST HARDWOOD LUMBER CO., Inc. et al.

### Civ. No. 2232.

District Court, W. D. Louisiana, Lake Charles Division.

Aug. 2, 1948.

384

Weatherly & Weatherly, and Gerald Weatherly, all of Falfurrias, Tex., and John D. Miller, of New Orleans, La., for plaintiff.

Jones, Kimball & Owen, G. T. Owen, Thompson, Lawes & Cavanaugh, Robt. B. Lawes and Plauche & Plauche, all of Lake Charles, La., Wood & Wood, J. R. Ferguson, Jas. C. Terrell, Jr., Jack L. Simms and W. C. Wood, all of Lessville, La., L. E. Colvin, of Mansfield, La., R. A. Fraser, of Many, La., and Kay & Kay and Stuart S. Kay, all of De Ridder, La., for defendants.

DAWKINS, District Judge.

Plaintiff, alleging itself to be a corporation under the laws of Nevada, sues the defendant corporation and some fourteen individuals, including the present and a deceased judge of the state court for Vernon Parish, and the receiver for plaintiff's property appointed therein, alleging a conspiracy to deprive plaintiff of its said property without due process of law, and to deny it the equal protection of the law, pitching its cause of action "under the 14th Amendment to the Constitution of the United States, Secs. 1 and 5; U.S.C.A. Tit. 8, Secs. 43 to 47(2) and (3)" and "Tit. 28, Sec. 41, subdivisions 12 and 14".

The substance of the complaint is as follows:

That C. D. Ferguson was appointed receiver of plaintiff's property by said State Court by an order "purportedly dated February 16, 1937, in a proceeding styled Albert Schmidt vs. Llano Del Rio Company; that said receiver acted as such under color of statute, regulation, custom or usage of the State of Louisiana"; that defendants, Cavanaugh, J. R. Ferguson and Woosley, in the matters charged, acted both in their "private and personal capacity" and as "duly appointed and qualified attorneys "for such receiver, under appointment of said court * * *".

Further, that for fifteen years before the appointment of said receiver "plaintiff corporation" had maintained and operated a "business" in Vernon Parish, consisting of numerous enterprises and activities enumerated in Article 7 of the complaint; that plaintiff's said business consisted of "a community of a large number of persons, called Llano Colony"; that on or about January 15, 1937, defendant, Anderson-Post Hardwood Lumber Co., Inc. (hereafter called Lumber Company), Cavanaugh and Woosley "conspired for the purpose of depriving plaintiff and its members within the State of Louisiana and its jurisdiction, either directly or indirectly, of the equal protection of the laws and of equal privileges and immunities under the laws, including the right to appear in said State Court to defend its property and rights.

The acts charged to have been committed by the several defendants were in substance as follows:

(Article 9 of the complaint) Cavanaugh and Woosley "pretended to and undertook *to act as the attorneys and counsellors at law for plaintiff,* and its de facto president, George T. Pickett, in receivership proceeding"; that Pickett at all times has been and is now attempting to save said property for plaintiff and its members; that said Cavanaugh and Woosley at the same time "were generally representing defendants Anderson" and said lumber company *"as their attorneys and counsellors at law."* (Emphasis by the writer.)

The following is quoted from the bill of complaint:

"12. On or about January 15, 1937, in Vernon Parish, Louisiana, defendant Anderson, acting as an officer and president of defendant Anderson-Post Hardwood Lumber Company, Incorporated, orally told said Pickett in substance that, if said Pickett would let the appraisement of plaintiff's property in said receivership proceeding be 'cut down' to where said Anderson and Anderson-Post Hardwood Lumber Company, Incorporated, 'could handle it,' and if said Pickett would obtain and cause to be assigned to said Anderson-Post Hardwood Lumber Company, Incorporated, certain promissory notes secured by mortgages on said property, said Anderson-Post Hardwood Lumber Company, Incorporated, would use said notes and certain

tax subrogations and subject said property to a judicial sale and would pay plaintiff's debts and taxes and then convey said property to said Pickett and the payees of said notes, for the benefit of plaintiff, less all hardwood timber standing on said property; thus effecting a sale to said Anderson-Post Hardwood Lumber Company, Incorporated, of said standing hardwood timber; from which standing timber said Anderson-Post Hardwood Lumber Company, Incorporated, would recover the amount it paid for said property, plus a profit.

"13. On or about January 18, 1937, in Vernon Parish, Louisiana, pretending to act as attorney and counselor at law of plaintiff and said Pickett, and actually acting as attorney and counselor at law of defendants Anderson and Anderson-Post Hardwood Lumber Company, Incorporated, defendant Cavanaugh made an oral statement to said Pickett, as plaintiff's de facto president, substantially the same as that hereinabove alleged as made by said Anderson to said Pickett.

"14. Confirming and substantially embodying said oral statements by said Anderson and said Cavanaugh, defendant Anderson-Post Hardwood Lumber Company, Incorporated, through said Anderson as its president, wrote, signed and delivered to said Pickett, as plaintiff's president, a letter as follows:

"Kurthwood, Louisiana,
"January 20th, 1937.

"Mr. George T. Pickett, President,
"Llano Del Rio Company of Nevada,
"Newllano, Louisiana.

"Dear Sir:

"In accordance with several conversations I have had with you, I am authorized to say that the Anderson-Post Hardwood Lumber Company, Inc. will pay the taxes on the property of Llano Del Rio Company of Nevada situated in Vernon Parish, Louisiana, and take from the Tax Collector of Vernon Parish a tax subrogation. These taxes amount to approximately $7,000.00—that is, $3500.00 of this amount is represented by five certificates made and executed by you to redeem the property sold to the State of Louisiana and its political subdivisions for the un-

paid taxes of 1931. My company will also pay the $3500.00 levied and assessed against said property for the year of 1936 and take from the Tax Collector of Vernon Parish a like subrogation.

"Of course, you understand that, under the law, the payment of the taxes by the Anderson-Post Hardwood Lumber Company, Inc. will operate as a preferred lien and prime any existing mortgages or other liens resting against the property at this time.

"In the event that you obtain possession of the following notes, secured by mortgage executed by Llano Del Rio Company of Nevada in favor of Richard Funke et als., dated September 4th, 1933, and recorded in Mortgage Book 105, page 62, of the Mortgage Records of Vernon Parish, Louisiana, to-wit: Richard Funke, $1000.00; Mrs. Iva Hoag, $567.40; Marcus Hardfin, $600.00; Mrs. Mary Pickett, $640.71; Mrs. Maud Van Newland, $2034.00; R. V. Shoemaker, $1901.00; John Szplia, $1845.76; George T. Pickett, $1500.00; George Collins, $715.66; Anna Loutrel, $177.92; C. C. Carruth, $1000.00; William Werner, $2000.-00; Mrs. W. A. Shutt, $800.00; Bert Bertino, $1150.00; and E. L. Hiatt, $850.00, and will transfer these notes to my company as assignee, my company will proceed to reduce these notes, together with the tax lien of $7000.00 I propose to pay, making a total claim for $23,782.45, to judgment. When this judgment is obtained it will operate as a first lien upon the property. We will then have execution to issue and the property sold at public sale, and I will bid for my company and for you and your associates—the mortgage creditors—up to the sum of $24,000.00, approximately, and buy in this property in the name of Anderson-Post Hardwood Lumber Company, Inc., and then, as soon as this sale is consummated, transfer to you and the mortgage creditors whom you represent the entire property, with the sole exception of any and all hardwood timber lying, standing and being situated upon said property. You understand that in this contemplated transaction I will have to raise approximately $4,000.00 more to take care of the Pollard first mortgage on the ice-plant and other buildings and improvements. I would

want these mortgage notes endorsed by the principals and without any limitation in the endorsement.

"I understand that it is your intention, in handling this transaction in this way, is to clear the title to the properties of the Llano Del Rio Company of Nevada and preserve it for the persons who have contributed their money in the purchase of it.

"You have my authority to show this letter to any of the persons whose notes you seek to obtain for the purpose herein set out, and say to the holders of these notes that it is my opinion that your effort in this matter is the only way to save anything for the benefit of the first mortgage creditors, and I know personally that you are not endeavoring to carry out this transaction for the purpose of private gain, but you feel that since through your time and effort and people who put their money in the Llano Del Rio Company of Nevada did so through your solicitation, and that your purpose in negotiating with me the sale of this timber is in order to pay the taxes on this property, and that the only way it can be done for a merchantable title to be to be delivered to the timber is by the procedure herein outlined, on account of mortgages and judgments resting against the property and the tax liens hereinabove designated.

"Yours very truly,
"Anderson-Post Hardwood
Lbr. Co. Inc.
"By J. H. Anderson (Signed)
"President.

"15. Said Pickett as plaintiff's president accepted and agreed to the contents of said letter, and did consent to and acquiesce in the reduction or 'cutting down' of the appraisement of plaintiff's property in said receivership proceeding, and within a due and reasonable time said Pickett obtained possession of the notes therein described and substantially transferred them to said Anderson-Post Hardwood Lumber Company, Incorporated, as assignee, and did all required of him in connection with the above agreement. Thus, making use of the good name of said Pickett and of the confidence which the payees of said notes justly had in said Pickett, and of their desire to rehabilitate plaintiff and its colony and en-

terprises, defendant Anderson-Post Hardwood Lumber Company, Incorporated, as it could not otherwise have done, got possession, control, and use of said notes and their securing mortgages.

"16. Thereafter the agreement evidenced by said letter and by said statements by said Anderson and said Cavanaugh was slightly modified orally by the parties thereto, to the extent that it was made unnecessary to have an execution issued as stated in said letter but it was agreed by these parties that a judicial sale in said receivership proceeding would serve the purpose and be substituted for the execution sale contemplated by said letter."

Petitioner further alleges (Article 18) that it was about October 27, 1938, that Woosley, acting for defendant Anderson and the said lumber company, while also "pretending to act as an attorney at law and counsellor for plaintiff and said Pickett", told Pickett, as de facto president of plaintiff, that said defendant corporation would "do anything that it could to save plaintiff's property for it; that said Pickett need not be afraid to sign any paper or papers that said Anderson wished him to sign; that said Anderson particularly wanted to see that nothing should happen to said tract of 7354 acres of land, and that nobody could dispossess plaintiff from it"; that in this setting said attorneys "advised and caused Pickett to execute a full conveyance of said tract of 7354 acres of land * * * to said" lumber company "for a recited consideration of $7209 (then and now less than one-twentyfifth of the mere surface of this land)", which said contract contained a provision that the vendor, Pickett, "may redeem the property * * * at any time within the space of one year from date * * * paying to said lumber company the purchase price" stated, "except as to all of the hardwood timber (including cypress) * * * situated upon said lands", which was to be retained by said lumber company, "and was not to be subject to redemption"; and that if redeemed within a year the said company should have ten years in which to cut and remove said timber; that said contract between Pickett and said lumber company further provided that during the twelve

months within which the property could be redeemed, the latter should have the right to cut and remove the pine timber at certain specified prices; that in event of failure to redeem within the year, Pickett should "forfeit as liquidated damages whatever credit or credits is due him by virtue of" said lumber company having cut said pine timber; that Pickett should pay all taxes accruing on the property between November 1, 1938 and November 1, 1939, and that said lumber company should not be responsible for any trespass upon said pine timber, during said year but only for the timber "it cuts and removes". Further, that on February 17, 1937, Anderson, represented by the said attorneys, who pretended to act also as attorney for Pickett, caused the latter to execute to said lumber company an "assignment of his rights" in "certain contracts of redemption" made with the state "for the redemption of all or part of the lands described * * *"; that on February 20, 1937, said Anderson, said lumber company and said attorneys "caused to be conveyed to it, at a judicial sale or sales in said receivership proceedings, and in pursuance of the agreement embodied in said letter of January 27, 1937, quoted by the complaint in detail; and that all the things thus done were in furtherance of the conspiracy charged in this complaint, without any intention that any part of said property should ever be reconveyed to Pickett. Further, that Pickett acted in good faith, and would not have done and performed the things which he did had it not been for the aforesaid agreement and understanding upon which he relied.

Further, that no part of said land had ever been reconveyed to Pickett or any one else for plaintiff company; that during the year, October 27, 1938–October 27, 1939, defendant lumber company cut and removed from said lands more than enough pine timber, at the prices agreed upon, to redeem the same, but nevertheless it had never made any reconveyance and still holds said land; that Pickett "has often and specifically by letters of February 21 and March 3, 1942, requested * * * an accounting of the matters stated * * * if any, shown by such usual accounting to be due".

Further, that on or about June 1, 1937, Anderson and his said lumber company, the former being an expert in the estimating and appraising of standing timber, induced certain appraisers appointed in the receivership proceeding not to make an actual appraisal but to accept his, Anderson's figure of 1,650,000 board feet, when in reality he knew and there was actually upon said land merchantable timber of some 10,000,-000 board feet; that it was about February 18, 22 or 25th, 1937, that defendant, Ponder, and thereafter said Burgess, judges of said court for Vernon Parish "acceded to and became a party to said conspiracy and then and thereafter intentionally and purposefully" aided "in depriving plaintiff of this property in said receivership proceedings" without due process of law and performed specific acts to cause the selling of plaintiff's property by the receiver "at grossly inadequate prices as hereinafter alleged." These acts were:

(Article 31 of the complaint) Appointed C. D. Ferguson "an unsuccessful lawyer without any qualifications to be plaintiff's receiver, as said petitioner then knew"; that J. R. Ferguson, a licensed attorney on or about February 18, 1937, also became a party to the said conspiracy in that "from December 12, 1936" he "had been pretending to represent said Pickett and one Carl Gleezer (the latter from January 19, 1937) as their attorney in said receivership proceeding" and as their attorney "signed and filed in said proceeding oppositions for them to the receiver, Richard Pollard's final account"; but that on or about February 18, 1937, "clandestinely and without their authorization, defendant, J. R. Ferguson, withdrew these oppositions, connived at or participated in the appointment of his brother, defendant C. D. Ferguson, as receiver of plaintiff's property, notwithstanding his knowledge of the lack of any qualification by his said brother and allowed himself, the said J. R. Ferguson, to be appointed attorney for said receiver", and thereafter acted in such capacity in all the matters complained of in the complaint.

Further, that Cavanaugh and Woosley also "connived at said clandestine action of C. D. Ferguson as receiver"; that on or

about February 18, 1937, the said receiver became a party to said conspiracy, and did or caused to be done the following:

Appropriated "practically all the income of plaintiff's property to payment of his salary as receiver thereof" and thereby prevented the purchase of a necessary supply of food from such income for plaintiff's members and colonists; that defendants, Ponder and Burgess (judges) permitted or did not disapprove this cutting off of all food of the members or colonists, although fully apprised thereof and its consequences by a letter or petition addressed to and presented to said judges, dated June 18, 1937, signed by many of said members and praying that this situation be remedied or alleviated, but that the said judges failed to act, rendering many of the said colonists destitute and causing them to leave and seek employment elsewhere for survival.

Further, that on or about December 29, 1937, the receiver through his attorney, said J. R. Ferguson, "filed in said receivership proceeding (notwithstanding this defendant and said Burgess then knew that plaintiff had successfully and even profitably operated as a going concern before said receivership proceeding for fifteen or more years) an application for an order of liquidation, alleging that after some twenty months, there appeared no reasonable hope of administering plaintiff's property so as to pay these debts, and that it was in the interest of all concerned that plaintiff should cease to function as a going concern and should be placed in a state of financial liquidation, through sale and conversion of its assets and property to cash"; and that (Article 39) on March 24, 1938, Ponder, as judge, entered an order for the liquidation and sale by the receiver of all of plaintiff's property "as expeditiously as possible * * *".

The complaint then proceeds to describe the character and extent of plaintiff's property, the nature of its activities and enterprises and those of its members or colonists, alleging an actual and "potential" value of approximately $13,500,000, which had been sold by defendant, C. D. Ferguson, in said receivership in pursuance of said conspiracy for $40,000, of which about $30,000 has been consumed as expenses of said receivership.

Beginning with Article 41 of the complaint, plaintiff describes the large number of sales of specific properties to various purchasers made pursuant to the aforesaid order of liquidation, numbered by letters of the alphabet, running through the letter "S." It then charges (Article 42) that the "site of plaintiff's town, Newllano, Louisiana, consisting of 60 acres", was sold to Kildair and LaCaze, "whereupon were most of the homes of plaintiff's members", the industrial enterprises, shops, hotel, etc. for the price of $6,390, when they were reasonably worth $1,850,000; that the purchasers "during World War II have made a clear profit of $1000 a day"; therefore that (Article 43) other properties were sold to Curry Ford for $1,785, which were "reasonably worth $100,000"; and that the purchasers of all said property, to wit: Kildair, LaCaze, Peavy, Page, Curry Ford, Johnson, Baccarat, Fertitta, Bullock and W. E. Ford severally "acceded to and became parties to such conspiracy". Further, (Article 45) that on February 18, 1939, upon discovering that plaintiff and its members were about to apply to this court to take from said state court under the Frazier-Lemke Bankruptcy Act the administration of plaintiff's property and enterprises, the said receiver and his attorney called a meeting of some of the conspirators and "hastily issued checks as such receiver on plaintiff's funds then on hand * * * for alleged fees due them in the receivership proceeding", which in turn were exchanged for cashier's checks in order to place said funds beyond the reach of plaintiff "in furtherance of the object of the said conspiracy * * * to deprive plaintiff and its members of property without due process of law and to prevent this court from acquiring control and jurisdiction of said funds * * *".

Further, that (Article 46) on September 18, 1944, plaintiff, having through its attorneys J. R. Hunter and Son, filed in said receivership proceeding a petition to require the receiver to file a final account of his administration, and also an answer to an application by the receiver to sell cer-

tain property, defendant J. R. Ferguson, attorney for the receiver, filed to plaintiff's said pleadings an exception of "want of authority" on the part of plaintiff and its attorneys to appear therein, and at the same time, the attorney of Kildair, was allowed to appear by third opposition in terms substantially the same as that of the receiver's exception, both of which were sustained by the presiding judge, said Burgess, thus preventing plaintiff from appearing or participating in said receivership proceeding, even though it involved and now involves and was and is for the disposition of all of plaintiff's property, thus denying it right to protect its property and depriving it of the same without due process of law; and that (Article 49) said defendants, Ponder and Burgess, (as judges) the receiver and his attorney, "have failed and refused and still fail and refuse to close said receivership proceeding * * * intentionally and purposefully in order to prevent any accounting by or attack on said receivership and the sales therein made."

(Article 50) Plaintiff "offers to make payment of such sums of money, if any, and do such act or acts, if any, as this court may consider that law and equity * * * shall require of plaintiff".

(Article 51) That plaintiff has been damaged in the sum of $13,500,000.

The prayer is (a) for judgment in damages "against all defendants jointly and severally for $13,500,000, with interest and costs"; (b) "alternatively, against each defendant * * * now holding any of plaintiff's property * * * for title to and possession of such property * * * with reasonable rental and damages"; (c) alternatively, against Anderson-Post Lumber Co., Inc., requiring it "to reconvey according to its agreement" stated in paragraphs 12 through 19, "all of plaintiff's property now held by it * * * with reasonable rent and damages"; (d) alternatively, that said Lumber Company "be required to make a full and true accounting to plaintiff as to matters stated in paragraph 25 hereof, and that on payment by plaintiff within a reasonable time, of the amount, if any, shown to be due defendant" Lumber Company "by said account-

ing" it "be required to convey to plaintiff the tract of 7354 acres * * * described in paragraph 17 hereof"; and (e) for general relief.

## Motions to Dismiss.

Some twelve separate motions to dismiss have been filed by various defendants, each urging substantially the same grounds, to wit:

1. (a) No one, officer, attorney or agent, has been authorized by any directors or stockholders to bring this suit;

(b) This court decided, September 12, 1939, in the matter of In re Llano Del Rio Company of Nevada, 29th Fed.Supp. 916, that plaintiff had no legally constituted board of directors to represent it, and that nothing has since been done to cure this situation;

(c) The state court of Vernon Parish, Louisiana, prior to the occurrence of all matters complained of, had acquired jurisdiction of plaintiff corporation and its property by the appointment of a receiver in the proceeding styled Albert Schmidt, et al vs. Llano Del Rio Co. Inc., No. 9247 in said court, which court, through said receiver, still maintains jurisdiction and custody of the corporation's property, and said receiver alone has the right to bring such a suit; and

(d) That George T. Pickett, a resident of Vernon Parish and a citizen of Louisiana, is an indispensable party plaintiff, and to bring him in would deprive this court of jurisdiction.

II. Jurisdiction of the subject matter is lacking because: (a) Of Pickett's status recited above.

(b) On its face the complaint shows this court is without jurisdiction, "insofar as jurisdiction is invoked under the alternative jurisdictional allegations contained in paragraphs 2 and 3 of the complaint", that is, the 14th Amendment, Secs. 1 and 5, U.S. C.A., Tit. 8, Secs. 43 and 47, (2) and (3), and U.S.C.A., Tit. 28, Secs. 41, subdivisions (12) and (14);

(c) The complaint is a collateral attack upon the sales made in the state court receivership and the judgments entered therein;

(d) It constitutes an attempt to have this court review and set aside judgments of the state court, as to which plaintiff has ample remedy by appeal under the state law;

(e) The state court, having acquired full and complete jurisdiction and having appointed a receiver for the plaintiff and its property, it has exclusive jurisdiction of the subject matter and such suit can be brought only under its authority.

(f) If it entertained the present action, this court would infringe on the prior jurisdiction of the state court.

III. The petition fails to state a claim for which relief can be granted in that:

(a) The state court, having appointed the receiver prior to the matters complained of, he alone can assert any right of action for recovery of the corporate assets or for damages of the type claimed.

(b) It is a collateral attack upon the state court proceeding;

(c) The judgments and orders of the state court were rendered more than a year prior to the filing of this complaint, from which no appeal was taken and are now final;

(d) Pickett is an indispensable party, whose bringing in would deprive this court of jurisdiction;

(e) The principal demand of plaintiff, a corporation, being for damages, neither the 14th Amendment, nor the provisions of Title 8 U.S.C.A., relied upon, give it the right to recover such damages;

(f) None of the facts alleged entitle plaintiff to recover damages;

(g) The claim is barred by the prescription of one year under Articles 3536 and 3537 of the Louisiana Civil Code applying to torts;

(h) It is also prescribed under Article 613 of the Louisiana Code of Practice barring any attack upon sales and judgments after a period of one year; and

(i) It is barred by the prescription of five years under Articles 3542 and 3543 of the Louisiana Civil Code.

IV. No one has authority to bring this complaint, as was held by this court in the proceeding in bankruptcy, above mentioned.

The complaint is not signed by counsel authorized to practise in this court. (This has since been cured by the appearance of local counsel.)

Attached to the motions to dismiss are affidavits of some five persons to the effect that they are and were stockholders in various amounts of the plaintiff corporation, some of them from its inception, to the effect that there have been no "regular or called meetings of the stockholders * * * since 1932 and that it has been the common understanding in the colony that there has been no stockholders' meetings since 1917".

## Opinion.

Two of these issues, it seems, should, appropriately, be disposed of first, to wit: The indispensability of Pickett as a party plaintiff and the right of the corporation to sue under the provisions of the Constitution and statutes alleged.

■ The complaint alleges as one of the principal fraudulent transactions, the sale by Pickett of a major portion of plaintiff's property to the lumber company, but pleads the good faith of Pickett at all times, charging that he was misled and induced to execute the documents by the advice of attorneys, who, while purporting to represent the plaintiff, were conniving with the other defendants to deprive it of its property for grossly inadequate considerations. Undoubtedly, if this were an action in which it was sought to re-vest in Pickett any part of said property, as the true owner, he would be an indispensable party. However, the effect of the allegations is to charge that the property was always that of plaintiff and that Pickett was only the instrumentality through which it was handled and conveyed to said lumber company and others. Apparently, this court will not be confronted with the question as to the real ownership of the property between Pickett and plaintiff, who alone would have any interest, it would seem, to raise such an issue.

It is not believed that Pickett is an indispensable party plaintiff.

### As to the Authority of the Corporation to Sue.

■■ The corporation, of course, can act only through lawful agents authorized and

empowered by the charter, stockholders, or board of directors, in the manner provided in its charter, and by-laws, or by statute. In answer to the plea of want of authority by any one to act for it in this suit, plaintiff has filed a certificate with the Secretary of State for the state of Nevada, to the effect that he is "custodian of the records relating to the forfeiture or suspension of corporate charters or the right of corporations to transact business in said state", and that plaintiff "is at date of this certificate (September 3, 1947) duly organized to exercise therein all the powers recited in its charter or articles of incorporation and to do business in said state; and that the attached is a full, true and correct copy of the annual list of officers, directors, etc., filed by said company, for the period July 1, 1947 to July 1, 1948." The list names the said George T. Pickett as president, Ole Synoground as vice-president, and A. H. Moore as secretary-treasurer, with some five other persons as directors. This, it is believed, is sufficient to overcome the weight of the affidavits of the five persons or stockholders to the effect that there had been no elections of directors or officers for many years, in disposing of this ground of the motion to dismiss. In other words, the certificate of the said secretary of state creates at least a presumption, prima facie, of the authority of the plaintiff to act through those purporting to represent it.

We take up next the question: does a corporation have the right to maintain an action such as this under what is known as the "Civil Rights" Provisions of the 14th Amendment to the Constitution and Sections 43 and 47 of Title 8 U.S.C.A.?

Sections 1 and 5 of the 14th Amendment are as follows:

"Section 1. All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

"Section 5. The Congress shall have power to enforce, by appropriate legislation, the provisions of this article."

Sections 43 and 47 of Title 8 U.S.C.A. provide:

"Section 43. Civil action for deprivation of rights.

"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

"Section 47. Conspiracy to interfere with civil rights.

\* \* \* \* \* \*

"(2) If two or more persons in any State or Territory conspire to deter, by force, intimidation, or threat, any party or witness in any court of the United States from attending such court, or from testifying to any matter pending therein, freely, fully, and truthfully, or to injure such party or witness in his person or property on account of his having so attended or testified, or to influence the verdict, presentment, or indictment of any grand or petit juror in any such court, or to injure such juror in his person or property on account of any verdict, presentment, or indictment lawfully assented to by him, or of his being or having been such juror; or if two or more persons conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws, or to injure him or his property for lawfully enforcing, or attempting to enforce, the right of any person, or class of persons, to the equal protection of the laws;

"(3) If two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under

the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws; or if two or more persons conspire to prevent by force, intimidation, or threat, any citizen who is lawfully entitled to vote, from giving his support or advocacy in a legal manner, toward or in favor of the election of any lawfully qualified person as an elector for President or Vice President, or as a Member of Congress of the United States; or to injure any citizen in person or property on account of such support or advocacy; in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages, occasioned by such injury or deprivation, against any one or more of the conspirators."

The provisions conferring jurisdiction to try issues under Sections 43 and 47 of Title 8 are found in subsections (12) and (14) of Section 41, 28 U.S.C.A., dealing with the jurisdiction generally of District Courts and are as follows:

"Section 41. The District Courts shall have original jurisdiction as follows:

"Section 41, subd. (12) Suits concerning civil rights. Twelfth. Of all suits authorized by law to be brought by any person for the recovery of damages on account of any injury to his person or property, or of the deprivation of any right or privilege of a citizen of the United States, by any act done in furtherance of any conspiracy mentioned in section 47 of Title 8. (R.S. § 563, par. 11, § 629, par. 17; Mar. 3, 1911, c. 231, § 24, par. 12, 36 Stat. 1092.)"

"Section 41 subd. (14) Suits to redress deprivation of civil rights. Fourteenth. Of all suits at law or in equity authorized by law to be brought by any person to redress the deprivation, under color of any law, statute, ordinance, regulation, custom, or usage, of any State, of any right, privilege, or immunity, secured by the Constitution of the United States, or of any right secured by any law of the United States providing for equal rights of citizens of the United States, or of all persons within the jurisdiction of the United States."

A corporation "is not a 'citizen' within the meaning of the privileges and immunities clause" (Sec. 1) of the 14th Amendment to the Federal Constitution. Grosjean v. American Press Co., 297 U.S. 233, 244, 56 S.Ct. 444, 447, 80 L.Ed. 660, and authorities cited therein. See Also Hague v. C.I.O., 307 U.S. 496, 514, 59 S.Ct. 954, 83 L.Ed. 1423. But it is a "'person' within the meaning of the equal protection and due process of law clauses". Grosjean v. American Press Co., supra. So that, although the plaintiff in this case, a corporation, cannot maintain a suit for damages under the first sentence of Sec. 1 of the 14th Amendment and Section 43 of Title 8 U.S.C.A., it does have a standing to assert a claim under the second and third clauses of the second sentences of said section 1 of the said amendment, to the effect " * * * nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws", and under the last clause of subsection (2) of Sec. 47 of Title 8 U.S.C.A. providing " * * * or if two or more persons conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws, or to injure him or his property for lawfully enforcing, or attempting to enforce, the right of any person, or class of persons, to the equal protection of the laws". A corporation may also assert a claim to damages as set forth in the concluding clause of the third paragraph of Section 47, to the effect that " * * * in any case of conspiracy set forth in this section, (47) if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person

or property * * * the party so injured or deprived may have an action for the recovery of damages, occasioned by such injury or deprivation, against any one or more of the conspirators"; 'jurisdiction to try such claim being vested in the said Federal District Courts by subsections (12) and (14) of Section 41 of U.S.C.A., quoted above.

 As to the contention that the holding of this court, on September 12, 1939, in the bankruptcy proceeding styled In re Llano Del Rio Co. of Nevada, D. C., 29 F.Supp. 916, that there was no one qualified to represent it therein, foreclosed the issue of the right to maintain the present suit, it is sufficient to say that the evidence before the court in that instance was not the same as has been presented here, i. e., the certificate of the secretary of state of Nevada, mentioned above. It was shown there that two groups of stockholders and persons claiming to be officers and directors of said corporation had provoked in the state court for Vernon Parish a quo warranto proceeding to test their respective rights to act as such and the state court had held that neither group had shown it was entitled to do so, which was one of the reasons for continuing the receivership. From this ruling there had been no appeal. Then, too, it was found by this court that under Section 75 of the Bankruptcy Act, 11 U.S.C.A. § 203, as it stood at that time, it was necessary to establish that 75 per cent of the stockholders of the corporation were farmers, which the applicants for relief thereunder had failed to do. The attempt was to have this court, by assuming jurisdiction of the debtor under Section 75, take from the State Court its property and affairs, which would have been accomplished by the approval of the proceeding, but which was denied for the reasons stated. Of course, either of the groups in the quo warranto proceedings might have appealed to the state appellate courts, which they did not do; and under the law of Louisiana, any one having a sufficient interest, although not a party originally to the suit, may appeal, which in this instance, would no doubt have included stockholders and perhaps the corporation itself, had it been able

to have itself recognized for that purpose by the state courts. Article 571, Louisiana Code of Practice. However, according to the complaint, as stated, efforts to appear in the state court proceedings have been unsuccessful; and defendants are continuing the receivership and refusing to close it in order to prevent any attack upon the conduct of the alleged conspirators in denying petitioner the equal protection of the law and thereby depriving it of its property without due process.

 Therefore, if this was a simple demand for damages, coupled with an alternative claim in equity for the annulment of private transactions between plaintiff or its agents with defendants, including the demand to reconvey the 7,354 acres of land by the lumber company with respect to property not in the hands of the State Court, I am convinced that this court would have jurisdiction, because of diversity of citizenship. However, at the threshold we are confronted with the very serious situation that the complaint, on its face, discloses that, for more than ten years, since the early part of 1937, the state court has had in its custody and under its control all the property in this state claimed by plaintiff. Both as a matter of comity and of the uniform rule that judgments and decrees of a court of competent jurisdiction cannot be attacked collaterally but only in the courts which rendered them, save and except where they are absolutely null and void, this court cannot disregard the facts as thus alleged and take the property in question out of the hands of the state court. Conceding, for the purpose of this issue, that all the charges against the several defendants, including the judges, are true, they do not challenge the jurisdiction of the state court, whose judgments are binding until set aside in the proper forum. The only place where this can be done is in the court which rendered these judgments and decrees. Porter v. Sabin, 149 U.S. 473, 13 S.Ct. 1008, 37 L.Ed. 815; Palmer et al. v. State of Texas, 212 U.S. 118, 29 S.Ct. 230, 53 L.Ed. 435; Klein v. Peter, 8 Cir., 284 F. 797; In re Associated Oil Co., D. C., 271 F. 788; Ency. Fed. Pro. (2nd Ed.) Vol. 6, Sec. 2088; C.J.S., Vol. 49, Verbo Judg-

394

ments, §§ 408, 449 et seq., page 809, 878. See also Louisiana Code of Practice, Article 604 et seq.; Holley v. General American Ins. Co., 8 Cir., 101 F.2d 172. They are not void, and can be set aside only upon proof of such fraud as a court of equity would not countenance. There is no reason that can be seen why the complaint filed here could not have been brought in the state court with proper prayers for annullment, etc. The laws of the state provide ample remedies for challenging and recusing any of the judges of the state court or other officers involved in the alleged frauds, (La. C. P. Art. 337; Riddle, Dist. Atty. v. Jeansonne, Sheriff, 203 La. 85, 13 So.2d 470,) and the Supreme Court has the power to assign other impartial judges to hear the cause (La. Const. art. VII, Secs. 10 and 12), with right of appeal and ultimate review by the Supreme Court of the United States, if necessary. Under express provisions of the state constitution and Code of Practice (Const. art. VII, Secs. 10 and 12, supra, C. P. art. 828 et seq.), its Supreme Court has very wide supervisory powers permitting it to act in any case where a litigant is denied the right to be heard in the lower courts.

Before it can be said that plaintiff has been damaged or that its property has been unjustly taken from it, it is necessary that the transactions complained of, consisting mainly of these judgments and decrees of the state court be set aside. Especially is this true of any sales of property under orders or decrees of the court, which had lawful custody and control thereof. I do not believe that the rule of comity, which denies to one court the right to take property from another, and the universal doctrine, that only the court which renders a voidable judgment has the power to set it aside, are affected by the provisions of the Constitution and the Federal Statutes relied upon by the plaintiff in this case. Full relief therein can be sought through the channels pointed out.

For the reasons assigned it is not necessary to consider the other points raised in the case and the motion to dismiss should be sustained.

Proper decree should be presented.