**John Robert ZELLNER, Mobile, Alabama, et al., Plaintiffs,**

v.

**Al LINGO, Director of Public Safety for the State of Alabama, et al., Defendants.**

**Civ. A. No. 1924–N.**

United States District Court
M. D. Alabama, N. D.
June 19, 1963.

Fred D. Gray, Montgomery, Ala., Jack Greenberg, Constance Baker Motley, Derrick A. Bell, Jr., George Smith

---

10. 3 Davis, *op. cit. supra* note 9, § 20.03, at 69–70.

11. Defendants' Memorandum, p. 7.

**514**

and Norman C. Amaker, New York City, for plaintiffs.

Richmond M. Flowers, Atty. Gen. of Alabama, Gordon Madison, Asst. Atty. Gen. of Alabama, John P. Kohn and Hugh Maddox, Montgomery, Ala., for defendant Al Lingo.

John P. Kohn and Hugh Maddox, Montgomery, Ala., pro se.

W. M. Beck, Sr., of Beck & Beck, Fort Payne, Ala., for defendants Harold Richards and W. J. Tindle.

Gordon Madison, Asst. Atty. Gen. of Alabama, Montgomery, Ala., for defendant Richmond Flowers.

Gordon Madison and Richmond M. Flowers, Montgomery, Ala., for defendant Holman.

JOHNSON, District Judge.

On May 3., 1963, the plaintiffs filed their complaint in this Court against the Director of Public Safety for the State of Alabama; said complaint was filed pursuant to the provisions of 28 U.S.C.A. § 1343(3), 42 U.S.C.A. § 1983, and Article I, § 8, Clause 3, Constitution of the United States. The alleged purpose of the action was to redress deprivation of rights secured to plaintiffs under the Due Process and Equal Protection Clauses of the Fourteenth Amendment to the Constitution of the United States. The complaint alleged that plaintiffs were threatened with the deprivation of these rights in that the defendant Lingo and those acting under his direction and control, under color of law, intended to interfere by arrest, prosecution and imprisonment, with plaintiffs' constitutionally protected right to walk peacefully through the State of Alabama.

A study of the complaint reflects that the plaintiffs had planned a "freedom walk" through the State of Alabama as a memorial to one William Moore, who was shot and killed recently on a similar walk. On May 18, 1963, the plaintiffs filed an amended and supplemental complaint, adding additional defendants and making additional averments. The amended and supplemental complaint re-

flects that on Friday, May 3, 1963 (at or about the time the original complaint was filed in this Court), the plaintiffs, while walking two abreast at approximately 15 feet apart, along U. S. Highway 11 in DeKalb County, Alabama, and while carrying signs protesting racial segregation, were arrested by the defendant Lingo and those acting under his direction and control; that plaintiffs were immediately thereafter incarcerated in the DeKalb County Jail at Fort Payne, Alabama, and charged with conduct calculated to provoke a breach of the peace under § 119(1), Title 14, of the Alabama Code. The amended and supplemental complaint further reflects that, while plaintiffs were incarcerated on this breach of peace charge, at the instigation of the Attorney General for the State of Alabama and other attorneys, herein made defendants, acting for the Governor for the State of Alabama, the Circuit Court of DeKalb County, Alabama, without prior notice to plaintiffs and without an opportunity for them to be heard, issued a temporary injunction wherein said plaintiffs were, insofar as DeKalb County is concerned, enjoined from participating in the "freedom walk" demonstration. The plaintiffs, in their amended and supplemental complaint, ask this Court to issue an injunction against the defendants, forbidding them from continuing to act under color of law of the State of Alabama in such a manner as to interfere with their right to walk peacefully through the State of Alabama and enjoining them from continuing to imprison and prosecute plaintiffs for their having exercised their constitutional right to walk peacefully through the State of Alabama and, generally, enjoining the defendants and those acting in concert with them from prosecuting plaintiffs "and others similarly situated" for violations of the criminal laws of the State of Alabama on account of plaintiffs' exercising their constitutional rights.

Each of the defendants to the complaint as amended and supplemented, by formal motion, seeks to have this Court

enter an order dismissing the action. In support of these motions to dismiss, the defendants assign grounds such as this Court lacks jurisdiction over the subject matter; this Court lacks jurisdiction over the persons of the defendants; the State of Alabama is an indispensable party to the action; an injunction, if issued, would violate the proposition that each state is guaranteed a republican form of government under Article IV, § 4, of the Constitution of the United States; and this Court should refuse to exercise its "equity jurisdiction" in this matter. All the grounds raised by the defendants are completely without merit, with the exception of that one asking this Court not to exercise its jurisdiction in this particular case. This Court has concluded, for the reasons hereinafter set out, that the motions to dismiss should be granted. The other motions filed herein by the defendants will become moot on the dismissal of this action.

As this Court has held many times, § 1343, Title 28, United States Code, and § 1981, Title 42, United States Code, vest this Court with jurisdiction in cases such as this one. In this connection, the Supreme Court of the United States in Edwards v. California (1941), 314 U.S. 160, 62 S.Ct. 164, 86 L.Ed. 119, stated:

"The right to move freely from State to State is an incident of *national* citizenship protected by the privileges and immunities clause of the Fourteenth Amendment against state interference. Mr. Justice Moody in Twining v. New Jersey, 211 U.S. 78, 97 [29 S.Ct. 14, 53 L. Ed. 97], stated, 'Privileges and immunities of citizens of the United States * * * are only such as arise out of the nature and essential character of the National Government, or are specifically granted or secured to all citizens or persons by the Constitution of the United States.' And he went on to state that one of those rights of *national* citizenship was 'the right to pass freely from State to State.' Id. [211

U.S.], p. 97 [29 S.Ct. pages 18, 19]. Now it is apparent that this right is not specifically granted by the Constitution. Yet before the Fourteenth Amendment it was recognized as a right fundamental to the national character of our Federal government. It was so decided in 1867 by Crandall v. Nevada, 6 Wall. 35 [18 L.Ed. 745]. In that case this Court struck down a Nevada tax 'upon every person leaving the State' by common carrier. Mr. Justice Miller writing for the Court held that the right to move freely throughout the nation was a right of *national* citizenship. That the right was implied did not make it any the less 'guaranteed' by the Constitution. Id. [6 Wall.], p. 47 [18 L.Ed. 745]. To be sure, he emphasized that the Nevada statute would obstruct the right of a citizen to travel to the seat of his national government or its offices throughout the country. And see United States v. Wheeler, 254 U. S. 281, 299 [41 S.Ct. 133, 65 L.Ed. 270]. But there is not a shred of evidence in the record of the Crandall case that the persons there involved were en route on any such mission any more than it appears in this case that Duncan entered California to interview some federal agency. The point which Mr. Justice Miller made was merely in illustration of the damage and havoc which would ensue if the States had the power to prevent the free movement of citizens from one State to another. This is emphasized by his quotation from Chief Justice Taney's dissenting opinion in the Passenger Cases, 7 How. 283, 492 [12 L. Ed. 702]: 'We are all citizens of the United States; and, as members of the same community, must have the right to pass and repass through every part of it without interruption, as freely as in our own States.' * * *

"So, when the Fourteenth Amendment was adopted in 1868, it had

been squarely and authoritatively settled that the right to move freely from State to State was a right of *national* citizenship. As such it was protected by the privileges and immunities clause of the Fourteenth Amendment against state interference. Slaughter House Cases, 16 Wall. 36, 74, 79 [21 L.Ed. 394]. * * *" (Emphasis by the Court.)

The exercise of this jurisdiction where it is requested for the purpose of restraining criminal prosecutions by the states is another matter. One of the leading cases on this particular point is Douglas v. Jeannette (1943), 319 U.S. 157, 63 S.Ct. 877, 87 L.Ed. 1324. In dealing with the particular question now presented to this Court, the Supreme Court therein stated:

"The power reserved to the states under the Constitution to provide for the determination of controversies in their courts may be restricted by federal district courts only in obedience to Congressional legislation in conformity to the judiciary Article of the Constitution. Congress, by its legislation, has adopted the policy, with certain well defined statutory exceptions, of leaving generally to the state courts the trial of criminal cases arising under state laws, subject to review by this Court of any federal questions involved. Hence, courts of equity in the exercise of their discretionary powers should conform to this policy by refusing to interfere with or embarrass threatened proceedings in state courts save in those exceptional cases which call for the interposition of a court of equity to prevent irreparable injury which is clear and imminent; and equitable remedies infringing this independence of the states—though they might otherwise be given—should be withheld if sought on slight or inconsequential grounds. Di Giovanni v. Camden Ins. Assn., supra [296 U. S. 64], 73 [56 S.Ct. 1, 5, 80 L.Ed. 47]; Matthews v. Rodgers, 284 U.S. 521, 525–26 [52 S.Ct. 217, 76 L.Ed. 447]; cf. United States ex rel. Kennedy v. Tyler, 269 U.S. 13 [46 S.Ct. 1, 70 L.Ed. 138]; Massachusetts State Grange v. Benton, 272 U.S. 525 [47 S.Ct. 189, 71 L.Ed. 387].

"It is a familiar rule that courts of equity do not ordinarily restrain criminal prosecutions. No person is immune from prosecution in good faith for his alleged criminal acts. Its imminence, even though alleged to be in violation of constitutional guaranties, is not a ground for equity relief since the lawfulness or constitutionality of the statute or ordinance on which the prosecution is based may be determined as readily in the criminal case as in a suit for an injunction. Davis & Farnum Mfg. Co. v. Los Angeles, 189 U.S. 207 [23 S.Ct. 498, 47 L.Ed. 778]; Fenner v. Boykin, 271 U.S. 240 [46 S. Ct. 492, 70 L.Ed. 927]. Where the threatened prosecution is by state officers for alleged violations of a state law, the state courts are the final arbiters of its meaning and application, subject only to review by this Court on federal grounds appropriately asserted. Hence the arrest by the federal courts of the processes of the criminal law within the states, and the determination of questions of criminal liability under state law by a federal court of equity, are to be supported only on a showing of danger of irreparable injury 'both great and immediate.' Spielman Motor [Sales] Co. v. Dodge, 295 U.S. 89, 95 [55 S.Ct. 678, 79 L.Ed. 1322], and cases cited; Beal v. Missouri Pacific R. Corp., 312 U.S. 45, 49 [61 S.Ct. 418, 85 L. Ed. 577], and cases cited; Watson v. Buck, 313 U.S. 387 [61 S.Ct. 962, 85 L.Ed. 1416]; Williams v. Miller, 317 U.S. 599 [63 S.Ct. 258, 87 L.Ed. 489]."

The Supreme Court of the United States next dealt with this matter again in Stefanelli v. Minard (1951), 342 U.S. 117, 72 S.Ct. 118, 96 L.Ed. 138. There

the Court, while admitting the state action violated the Fourteenth Amendment, stated:

> "For even if the power to grant the relief here sought may fairly and constitutionally be derived from the generality of language of the Civil Rights Act, to sustain the claim would disregard the power of courts of equity to exercise discretion when, in a matter of equity jurisdiction, the balance is against the wisdom of using their power. Here the considerations governing that discretion touch perhaps the most sensitive source of friction between States and Nation, namely, the active intrusion of the federal courts in the administration of the criminal law for the prosecution of crimes solely within the power of the States.

> " * * * The maxim that equity will not enjoin a criminal prosecution summarizes centuries of weighty experience in Anglo-American law. * * * The special delicacy of the adjustment to be preserved between federal equitable power and State administration of its own law, has been an historic concern of congressional enactment, see, e. g., 28 U.S.C. §§ 1341, 1342, 2283, 2284(5). This concern has been reflected in decisions of this Court, not governed by explicit congressional requirement, bearing on a State's enforcement of its criminal law. E. g., Watson v. Buck, 313 U.S. 387 [61 S.Ct. 962, 85 L.Ed. 1416]; Beal v. Missouri Pacific R. Co., 312 U.S. 45 [61 S.Ct. 418, 85 L.Ed. 577]; Spielman Motor Co. v. Dodge, 295 U.S. 89 [55 S.Ct. 678, 79 L.Ed. 1322]; Fenner v. Boykin, 271 U.S. 240 [46 S. Ct. 492, 70 L.Ed. 927]. It has received striking confirmation even where an important countervailing federal interest was involved. Maryland v. Soper (No. 1), 270 U.S. 9 [46 S.Ct. 185, 70 L.Ed. 449]; Maryland v. Soper (No. 2), 270 U.S. 36 [46 S. S.Ct. 192, 70 L.Ed. 459]; Maryland v. Soper (No. 3), 270 U.S. 44 [46 S.Ct. 194, 70 L.Ed. 462]." (Footnotes omitted.)

The latest treatment of this proposition by the Supreme Court of the United States was in Cleary v. Bolger (Jan. 1963), 371 U.S. 392, 83 S.Ct. 385, 9 L. Ed.2d 390. In that case, Mr. Justice Harlan, speaking for the Court, stated:

> "Courts of equity traditionally have refused, except in rare instances, to enjoin criminal prosecutions. This principle 'is impressively reinforced when not merely the relations between coordinate courts but between coordinate political authorities are in issue.' Stefanelli v. Minard, 342 U.S. 117, 120 [72 S.Ct. 118, 96 L.Ed. 138]. It has been manifested in numerous decisions of this Court involving a State's enforcement of its criminal law. E. g., Pugach v. Dollinger, 365 U.S. 458 [81 S.Ct. 650, 5 L.Ed.2d 678]; Douglas v. City of Jeannette, 319 U.S. 157 [63 S.Ct. 877, 87 L.Ed. 1324]; Watson v. Buck, 313 U.S. 387 [61 S.Ct. 962, 85 L.Ed. 1416]; Beal v. Missouri Pac. R. Co., 312 U.S. 45 [61 S.Ct. 418, 85 L.Ed. 577]. The considerations that have prompted denial of federal injunctive relief affecting state prosecutions were epitomized in the Stefanelli case, in which this Court refused to sanction an injunction against state officials to prevent them from using in a state criminal trial evidence seized by state police in alleged violation of the Fourteenth Amendment:

> > " '[W]e would expose every State criminal prosecution to insupportable disruption. Every question of procedural due process of law—with its far-flung and undefined range—would invite a flanking movement against the system of State courts by resort to the federal forum, with review if need be to this Court, to determine the issue. Asserted unconstitutionality in the impaneling

and selection of the grand and petit juries, in the failure to appoint counsel, in the admission of a confession, in the creation of an unfair trial atmosphere, in the misconduct of the trial court—all would provide ready opportunities, which conscientious counsel might be bound to employ, to subvert the orderly, effective prosecution of local crime in local courts. To suggest these difficulties is to recognize their solution.' "

The action now being taken by this Court in refusing to enjoin the criminal prosecution of these plaintiffs by officers acting under color of law for the State of Alabama must not be construed as an approval of the action taken by these officers in arresting and prosecuting these plaintiffs under the guise of maintaining and preserving the peace and tranquillity of the State of Alabama. This Court is not unmindful of the consistent action of the Supreme Court of the United States in reversing such convictions based upon breach of the peace statutes; for instance, Edwards et al. v. South Carolina (Feb.1963), 372 U.S. 229, 83 S.Ct. 680, 9 L.Ed.2d 697; Wright et al. v. State of Georgia (May 1963), 373 U.S. 284, 83 S. Ct. 1240; Peterson et al. v. City of Greenville, South Carolina (May 1963), 373 U. S. 244, 83 S.Ct. 1119; Lombard et al. v. State of Louisiana (May 1963), 373 U.S. 267, 83 S.Ct. 1122. It is significant to note, however, that in each of these cases the matter was presented to the Supreme Court through the state court system and not in a collateral proceeding in a United States district court such as plaintiffs attempt here in violation of the principles as set out in Douglas v. Jeannette, Stefanelli v. Minard, and Cleary v. Bolger; furthermore, the action herein taken by this Court should not be considered as an approval of the action on the part of certain of the attorney-defendants in their "running" to the Circuit Court of DeKalb County, Alabama, after this matter had been filed and was pending in this Court and before this Court was given a reasonable opportunity to act.[1] Such a maneuver adds nothing to the legal position [2] of the defendants and adds nothing to the stature of the attorneys participating therein as officers of this Court.

For the foregoing reasons and for good cause, it is, therefore, the order, judgment and decree of this Court that the motion of the defendant Lingo filed herein on May 17, 1963, the motion of the defendants Kohn and Maddox filed herein on May 29, 1963, the motion of the defendants Tindle and Richards filed herein on May 31, 1963, the motion of the defendant Flowers filed herein on May 31, 1963, and the motion of the defendant Holman filed herein on May 31, 1963, be and each is hereby granted. It is further ordered that this cause be and the same is hereby dismissed as to each of the defendants named in plaintiffs' amended and supplemental complaint.

It is further ordered that the costs incurred herein be and they are hereby taxed against the plaintiffs, for which execution may issue.

[1]. This action was filed in this Court on May 3, 1963; the defendant Lingo was served on May 3, 1963; on May 7, 1963, the action seeking an injunction was filed in the Circuit Court of DeKalb County, Alabama, and a State court injunction was granted without notice on the same date.

[2]. This Court has the authority to proceed under 28 U.S.C. § 2283 even in the face of such State court action "where necessary in aid of its jurisdiction."