## STEFANELLI ET AL. *v.* MINARD ET AL.

No. 2. Argued October 16, 1951.—Decided December 3, 1951.

*Mordecai Michael Merker* argued the cause for petitioners, and *Anthony A. Calandra* filed a brief for petitioners.

*Richard J. Congleton* and *Charles Handler* argued the cause for respondents. With them on the brief were *Theodore D. Parsons,* Attorney General of New Jersey, *C. William Caruso* and *Vincent J. Casale.*

MR. JUSTICE FRANKFURTER delivered the opinion of the Court.

Petitioners asked equitable relief from the Federal District Court to prevent the fruit of an unlawful search by New Jersey police from being used in evidence in a State

criminal trial. The suit was brought under R. S. § 1979, 8 U. S. C. § 43, providing for redress against "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws . . . ." [1] Upon respondents' motion, the District Court dismissed the complaints, "it appearing that the plaintiffs have not exhausted their remedies under state law." The Court of Appeals affirmed. 184 F. 2d 575. Since it raises important questions touching the Civil Rights Act in the context of our federal system we brought the case here. 341 U. S. 930.

Two suits, arising out of separate series of events, were consolidated in the Court of Appeals and are before us as one case. The facts do not differ materially. Newark police officers entered petitioners' homes without legal authority. There they seized property of petitioners useful in bookmaking, a misdemeanor under N. J. Rev.

---

[1] "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

Jurisdiction was founded, without regard to citizenship of the parties or amount in controversy, on 28 U. S. C. § 1343 (3):

"The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person:

"(3) To redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States." *Hague* *C. I. O.,* 307 U. S. 496.

Stat. 2:135–3. It is not disputed that these searches, if made by federal officers, would have violated the Fourth Amendment. Stefanelli was arrested, arraigned and subsequently indicted for bookmaking. He pleaded not guilty. The other petitioners, after hearing, were held on the same charge to await the action of the Essex County grand jury. All allege that the seized property is destined for evidence against them in the New Jersey criminal proceedings. Petitioners have made no move in the State courts to suppress the evidence, justifying their failure to do so on the ground that under existing New Jersey law the seized property is admissible without regard to the illegality of its procurement.

Petitioners invoke our decision in *Wolf* v. *Colorado*, 338 U. S. 25. The precise holding in that case was "that in a prosecution in a State court for a State crime the Fourteenth Amendment does not forbid the admission of evidence obtained by an unreasonable search and seizure." *Id.,* at 33. Although our holding was thus narrowly confined, in the course of the opinion it was said: "The security of one's privacy against arbitrary intrusion by the police—which is at the core of the Fourth Amendment—is basic to a free society. It is therefore implicit in 'the concept of ordered liberty' and as such enforceable against the States through the Due Process Clause. . . . Accordingly, we have no hesitation in saying that were a State affirmatively to sanction such police incursion into privacy it would run counter to the guaranty of the Fourteenth Amendment." *Id.,* at 27–28. There was disagreement as to the legal consequences of this view, but none as to its validity. We adhere to it. Upon it is founded the argument of petitioners.

If the Fourteenth Amendment forbids unreasonable searches and seizures by the States, they contend, such a search and seizure by State police officers subjects its victims to the deprivation, under color of State law, of a

right, privilege or immunity secured by the Constitution for which redress is afforded by R. S. § 1979. Appropriate redress, they urge, is a suit in equity to suppress the evidence in order to bar its further use in State criminal proceedings.

There is no occasion to consider such constitutional questions unless their answers are indispensable to the disposition of the cause before us. In the view we take, we need not decide whether the complaint states a cause of action under R. S. § 1979. For even if the power to grant the relief here sought may fairly and constitutionally be derived from the generality of language of the Civil Rights Act, to sustain the claim would disregard the power of courts of equity to exercise discretion when, in a matter of equity jurisdiction, the balance is against the wisdom of using their power. Here the considerations governing that discretion touch perhaps the most sensitive source of friction between States and Nation, namely, the active intrusion of the federal courts in the administration of the criminal law for the prosecution of crimes solely within the power of the States.

We hold that the federal courts should refuse to intervene in State criminal proceedings to suppress the use of evidence even when claimed to have been secured by unlawful search and seizure. The maxim that equity will not enjoin a criminal prosecution summarizes centuries of weighty experience in Anglo-American law. It is impressively reinforced when not merely the relations between coordinate courts but between coordinate political authorities are in issue. The special delicacy of the adjustment to be preserved between federal equitable power and State administration of its own law, has been an historic concern of congressional enactment, see, e. g., 28 U. S. C. §§ 1341, 1342, 2283, 2284 (5). This concern has been reflected in decisions of this Court, not governed by explicit congressional requirement, bearing on a

State's enforcement of its criminal law.  *E. g., Watson* v. *Buck,* 313 U. S. 387; *Beal* v. *Missouri Pacific R. Co.,* 312 U. S. 45; *Spielman Motor Co.* v. *Dodge,* 295 U. S. 89; *Fenner* v. *Boykin,* 271 U. S. 240.  It has received striking confirmation even where an important countervailing federal interest was involved.  *Maryland* v. *Soper* (No. 1), 270 U. S. 9; *Maryland* v. *Soper* (No. 2), 270 U. S. 36; *Maryland* v. *Soper* (No. 3), 270 U. S. 44.[2]

These considerations have informed our construction of the Civil Rights Act.  This Act has given rise to differences of application here.  Such differences inhere in the attempt to construe the remaining fragments of a comprehensive enactment, dismembered by partial repeal and invalidity, loosely and blindly drafted in the first instance,[3] and drawing on the whole Constitution itself for its scope and meaning.  Regardless of differences in particular cases, however, the Court's lodestar of adjudication has been that the statute "should be construed so as to respect the proper balance between the States and the federal government in law enforcement."  *Screws* v. *United States,* 325 U. S. 91, 108.  Only last term we reiterated our conviction that the Civil Rights Act "was not to be used to centralize power so as to upset the federal system."  *Collins* v. *Hardyman,* 341 U. S. 651, 658.  Discretionary refusal to exercise equitable power under the Act to interfere with State criminal prosecution is

---

[2] In those cases, despite the obvious concern of Congress for enforcement of revenue laws unimpeded by local opposition, the Court duly respected State criminal justice by carefully limiting the power of removing to the federal courts State criminal prosecutions involving federal revenue officers who claimed that such prosecutions were "on account of any act done under the color of [their] office."  R. S. § 643, now 28 U. S. C. § 1442.

[3] We recently commented on the circumstances surrounding the enactment of this legislation in *United States* v. *Williams,* 341 U. S. 70, 74, and *Collins* v. *Hardyman,* 341 U. S. 651, 657.

one of the devices we have sanctioned for preserving this balance. *Douglas* v. *City of Jeannette,* 319 U. S. 157. And under the very section now invoked, we have withheld relief in equity even when recognizing that comparable facts would create a cause of action for damages. Compare *Giles* v. *Harris,* 189 U. S. 475, with *Lane* v. *Wilson,* 307 U. S. 268.

In *Douglas* v. *City of Jeannette, supra,* the Court, speaking through Chief Justice Stone, said:

> "Congress, by its legislation, has adopted the policy, with certain well defined statutory exceptions, of leaving generally to the state courts the trial of criminal cases arising under state laws, subject to review by this Court of any federal questions involved. Hence, courts of equity in the exercise of their discretionary powers should conform to this policy by refusing to interfere with or embarrass threatened proceedings in state courts save in those exceptional cases which call for the interposition of a court of equity to prevent irreparable injury which is clear and imminent; . . . ." *Id.,* at 163.[4]

No such irreparable injury, clear and imminent, is threatened here. At worst, the evidence sought to be suppressed may provide the basis for conviction of the petitioners in the New Jersey courts. Such a conviction, we have held, would not deprive them of due process of law. *Wolf* v. *Colorado, supra.*

If these considerations limit federal courts in restraining State prosecutions merely threatened, how much more cogent are they to prevent federal interference with pro-

---

[4] *Hague* v. *C. I. O., supra,* was distinguished in the *Jeannette* case: "In these respects the case differs from *Hague* v. *C. I. O., supra,* 501–02, where local officials forcibly broke up meetings of the complainants and in many instances forcibly deported them from the state without trial." *Douglas* v. *City of Jeannette, supra,* at 164.

ceedings once begun. If the federal equity power must refrain from staying State prosecutions outright to try the central question of the validity of the statute on which the prosecution is based, how much more reluctant must it be to intervene piecemeal to try collateral issues.[5]

The consequences of exercising the equitable power here invoked are not the concern of a merely doctrinaire alertness to protect the proper sphere of the States in enforcing their criminal law. If we were to sanction this intervention, we would expose every State criminal prosecution to insupportable disruption. Every question of procedural due process of law—with its far-flung and undefined range—would invite a flanking movement against the system of State courts by resort to the federal forum, with review if need be to this Court, to determine the issue. Asserted unconstitutionality in the impaneling and selection of the grand[6] and petit[7] juries, in the failure to appoint counsel,[8] in the admission of a confession,[9] in the creation of an unfair trial atmosphere,[10] in the misconduct of the trial court[11]—all would provide ready opportunities, which conscientious counsel might be bound to employ, to subvert the orderly, effective pros-

---

[5] Congress has consistently demonstrated concern that the orderly course of judicial proceedings should not, in the absence of compelling circumstances defined by statute, be broken up for the piecemeal determination of the issues involved. See, e. g., 28 U. S. C. § 1291; Cobbledick v. United States, 309 U. S. 323 (appeals from "final decisions" of the district courts); 28 U. S. C. § 1441 (c) (removal of "separable controversies"); and cf. Hurn v. Oursler, 289 U. S. 238.

[6] See Smith v. Texas, 311 U. S. 128.

[7] See Strauder v. West Virginia, 100 U. S. 303; Pierre v. Louisiana, 306 U. S. 354.

[8] See Powell v. Alabama, 287 U. S. 45.

[9] See Watts v. Indiana, 338 U. S. 49.

[10] See Moore v. Dempsey, 261 U. S. 86.

[11] See Townsend v. Burke, 334 U. S. 736.

ecution of local crime in local courts. To suggest these difficulties is to recognize their solution.[12]

Mr. Justice Holmes dealt with this problem in a situation especially appealing: "The relation of the United States and the Courts of the United States to the States

---

[12] Although this is the first such case to reach us, instances are not wanting where the fairness of State court proceedings has been attacked in the lower federal courts under R. S. § 1979 and related sections. We refer to them by way of illustration. An action for damages was sustained against a motion to dismiss where plaintiff alleged that she was arrested without warrant, that defendants, a justice of the peace and a constable, maliciously secured the appointment of a biased jury and subjected her to a fraudulent trial resulting in a conviction reversed on appeal. *McShane* v. *Moldovan*, 172 F. 2d 1016; cf. *Picking* v. *Pennsylvania R. Co.*, 151 F. 2d 240 (complaint seeking damages for false arrest and detention in violation of the Uniform Extradition Act sustained against motion to dismiss). But see *Campo* v. *Niemeyer*, 182 F. 2d 115; *Lyons* v. *Baker*, 180 F. 2d 893; *Bottone* v. *Lindsley*, 170 F. 2d 705; *Mitchell* v. *Greenough*, 100 F. 2d 184; *Llano Del Rio Co.* v. *Anderson-Post Hardwood Lumber Co.*, 79 F. Supp. 382, aff'd *per curiam*, 187 F. 2d 235. Closer to the case before us are suits for injunctions grounded on the contention that particular phases of criminal proceedings are unfair. The lower courts have refused to intervene. *Cooper* v. *Hutchinson*, 184 F. 2d 119 (refusal of State court to allow criminal defendant counsel of his own choosing; case remanded for district court to retain jurisdiction pending exhaustion of State remedies); *Ackerman* v. *International Longshoremen's & Warehousemen's Union*, 187 F. 2d 860, reversing 82 F. Supp. 65, which had enjoined prosecutions in part on the ground of discrimination in selection of grand jury panel; *McGuire* v. *Amrein*, 101 F. Supp. 414 (refusal to suppress wire tap evidence; alternate ground); *Erickson* v. *Hogan*, 94 F. Supp. 459 (suppression of evidence obtained through unlawful search and seizure); *Refoule* v. *Ellis*, 74 F. Supp. 336 (court would not enjoin use of allegedly coerced confession in State prosecution although enjoining future unlawful arrest, detention and interrogation of plaintiff); cf. *Eastus* v. *Bradshaw*, 94 F. 2d 788. And see *Hoffman* v. *O'Brien*, 88 F. Supp. 490, where an action under R. S. § 1979 to enjoin the enforcement of the New York wire tap law was dismissed for want of a justiciable controversy.

and the Courts of the States is a very delicate matter that has occupied the thoughts of statesmen and judges for a hundred years and can not be disposed of by a summary statement that justice requires me to cut red tape and to intervene." Memorandum of Mr. Justice Holmes in 5 The Sacco-Vanzetti Case, Transcript of the Record (Henry Holt & Co., 1929) 5516. A proper respect for those relations requires that the judgment below be

*Affirmed.*

MR. JUSTICE BLACK and MR. JUSTICE CLARK concur in the result.

MR. JUSTICE MINTON took no part in the consideration or decision of this case.

MR. JUSTICE DOUGLAS, dissenting.

Mr. Justice Murphy, Mr. Justice Rutledge, and I voted in *Wolf* v. *Colorado,* 338 U. S. 25, that evidence obtained as a result of an unreasonable search and seizure should be excluded from state as well as federal trials. In retrospect the views expressed by Mr. Justice Murphy and Mr. Justice Rutledge grow in power and persuasiveness. I adhere to them. I therefore think that any court may with propriety step in to prevent the use of this illegal evidence. To hold first that the evidence may be admitted and second that its use may not be enjoined is to make the Fourth Amendment an empty and hollow guarantee so far as state prosecutions are concerned.