388

Frank BYRD, by his guardian ad litem, Christobel Byrd, Arthur W. Stanley, Jr., by his guardian ad litem, Theodosia K. Stanley, Bobby Blackman, et al., Plaintiffs

v.

Bennie A. GARY, Principal of Mayo High School, G. C. Mangum, Area No. 1 Superintendent, et al., Defendants.

Civ. A. No. 7199.

United States District Court
E. D. South Carolina,
Florence Division.

May 18, 1960.

Elliott D. Turnage, Darlington, S. C., for plaintiffs.

P. H. McEachin, of McEachin, Townsend & Zeigler, Florence, S. C., and D. Carl Cook, Hartsville, S. C., for defendants.

WILLIAMS, District Judge.

■ Plaintiffs brought this action for an alleged violation of the rights of the plaintiffs, Frank Byrd, Arthur W. Stanley, Jr., and Bobby Blackman, to attend Mayo High School in the City of Darlington and for other relief, all of which is summarized in the prayer of the complaint as follows:

1. "That the Court do declare that section 230(3), title 21 of The South Carolina 1952 Code of laws is unconstitutional, as being in conflict with the due process clause of section 1, of article XIV, of the constitution of the United States of America; and the Court do enjoin the defendants and each of them, from threatening or continuing to expel any pupil of Mayo High School, Darlington, S. C., pursuant to the provisions of same.

2. "That the Court do declare that under the facts and circumstances of this case, the threatened or actual dismissal or expulsion of any of the plaintiff pupils by said defendants, or either of them constitutes a deprivation of said pupils and plaintiffs of civil rights in violation of said section 1, of article

XIV, of said constitution and that the Court do enjoin the defendants and each of them from continuing to do so.

3. "That the Court do declare that the threatened or actual dismissal or expulsion of any of the plaintiff pupils by said defendants, Bennie A. Gary or G. C. Mangum pursuant to powers purported to have been delegated to them by said Boards above mentioned, constitutes a deprivation of civil rights of said pupils and plaintiffs, in violation of said section 1, of article XIV, of said amendment to said Constitution of the United States of America, and that the Court do enjoin the defendants and each of them from continuing to do so.

4. "For such other relief general or specific, which to the Court shall seem fitting by reason of premises."

Following the service of the summons and complaint plaintiffs gave notice of a motion for a preliminary injunction to enjoin

"the defendants, Bennie A. Gary, G. C. Mangum, the Darlington County Board of School Trustees and the defendant individual members thereof, their agents, servants, employees and attorneys, from expelling or threatening or continuing to threaten to expel the plaintiff pupils from attendance in Mayo High School, Darlington, S. C., in the manner or for the causes set forth in the Complaint, and from expelling or threatening to expel any other pupils from said school for said causes or in said manner."

The grounds of the motion are set out therein and may be generally stated to contend that defendants are depriving plaintiffs of civil rights guaranteed them by the due process and equal protection of the law, Article 1, Section XIV of the amendments to the Constitution of the United States or

"are acting pursuant to rules, regulations and practices which plaintiffs

contend violate the laws of the State of South Carolina and said section of the Constitution of the United States of America."

The motion was called for hearing before me in open Court at Florence, S. C., on May 11, 1960. Defendants made timely motion to dismiss the application for a temporary injunction upon grounds set out in the record. The motion to dismiss was taken under advisement and the Court proceeded to take the testimony offered by plaintiffs and defendants.

It appears from the testimony that plaintiffs, Frank Byrd, Arthur W. Stanley, Jr. and Bobby Blackman, students at Mayo High School, in Darlington, S. C., were sent home by the defendant, Bennie A. Gary, for attempting to organize a boycott by the student body of Cobles' Milk, a product served by the school in its cafeteria, after having been previously warned in a meeting of the whole student body, that such practices would not be permitted in the school.

Each of these boys was given a note to take to his parent stating that a conference could be arranged with the Area Superintendent, the defendant, G. C. Mangum. The parents of two of the boys requested a conference with the Superintendent but failed to appear at the appointed time and place, although due notice was given to each parent requesting the conference. The third boy's parent requested no conference. A fourth boy, who was sent home at about the same time for the same offense with a similar note to his parent, acting through his parent requested a conference with the Area Superintendent. The conference was held by the Superintendent with the boy and his mother resulting in the boy being reinstated in the school.

All three of the boys admitted on cross-examination that they had not availed themselves of the opportunity to confer with the Area Superintendent with the parent or parents of each boy present. Instead they, through their parents, in-

stituted this case to secure reinstatement in the school.

From the testimony of the principal and Area Superintendent the Trustees of the school by proper rule gave the principal authority to temporarily send a student home when in his discretion the best interest of the school required such action. The procedure provided being that the principal would have a note sent by the child to the parent giving notice that the parent and child could arrange a conference with the Superintendent in reference to the disciplinary action. Should the conference be requested a time and place would be fixed by the Area Superintendent and due notice thereof given to the parent.

Upon holding the conference the Superintendent can reinstate the child if he considered it proper or continue the temporary suspension and report the case with his recommendations to the Board of Trustees, which Board would make disposition of the case by a written order, a copy of which to be delivered to the parent by mail or otherwise.

The parent or person in loco parentis has the right of appeal from any action of the Board of Trustees to the County Board of Education, and from there to the Circuit Court where the matter will be heard de novo by the Circuit Judge. This administrative procedure is afforded under S.C.1952 Code, Sections 21–230 (2), 21–247, 21–247.2, 21–247.3, 21–247.4 and 21–247.5.

Under the provisions of Sec. 21–230, S. C.1952 Code, the Trustees have the power to "(3) suspend or dismiss pupils when the best interest of the schools makes it necessary." The general powers granted school trustees by Sec. 21–230, clearly permits the trustees to delegate to the principal and Superintendent such authority as was used in this case.

"The Trustees have an unquestioned right to expel a student for just cause. The trustees also have the power to delegate the right of expulsion to its officers or the officers of the University.

"Plaintiff's motion seeks to have the Court amend its order of February 29 to provide that the plaintiff be readmitted to the University for the September 1956 term. The Court is of the opinion that it should not interfere with the administrative acts of the Trustees or the officers of the University except upon appropriate proceedings, and after a clear showing that such acts contravene the constitutional rights of the plaintiff as defined by the Supreme Court. I am, therefore, of the opinion that in the present posture of this case that plaintiff's motion to amend the order of February 29, 1956, should be overruled. This ruling, however, is without prejudice to plaintiff as to any future proceedings that may appropriately challenge the acts of the Trustees in permanently expelling her from the University." Lucy, et al. v. Adams, et al., U. S. District Court, Northern District, Ala., Aug. 29, 1956, Civ. No. 652.

The plaintiffs have not exhausted the administrative procedure provided under the State law for the disposition of local controversies arising under the school law. In fact they have failed to take the first step, i. e. arrange a conference with the Area Superintendent in accordance with instructions given each parent by the principal.

"An administrative remedy is thus provided by state law for persons who feel that they have not been assigned to the schools that they are entitled to attend; and it is well settled that the courts of the United States will not grant injunctive relief until administrative remedies have been exhausted." Covington v. Edwards, 4 Cir., 264 F.2d 780, 781.

There is grave doubt that this Court has jurisdiction of this cause. The evidence adduced at the hearing shows conclusively that the issues only present a local controversy where a school official acting under the color of his office is

conscientiously endeavoring to fulfill his duty to the State.

"Thus, as I view the delicate balance which exists between State and Federal jurisprudence, only a case of manifest oppression will justify a Federal Court in enjoining state officials acting colore officii in their conscientious endeavor to fulfill their duty to the State. A Federal Court should not enjoin 'activities of state officers discharging in good faith their supposed official duties' except ' "in a case reasonably free from doubt" '. These are the written words of a great jurist—Mr. Justice Cardozo, who said: 'The case thus far has been considered from the viewpoint of the substantive law, the basic rights and duties contested by the litigants. There is another path of approach that brings us to the same goal, an approach along the line of the law of equitable remedies. Caution and reluctance there must be in any case where there is the threat of opposition, in respect of local controversies, between state and federal courts. Caution and reluctance there must be in special measure where relief, if granted, is an interference by the process of injunction with the activities of state officers discharging in good faith their supposed official duties. In such circumstances this court has said that an injunction ought not to issue "unless in a case reasonably free from doubt." * * * A prudent self-restraint is called for at such times if state and national functions are to be maintained in stable equilibrium. Reluctance there has been to use the process of federal courts in restraint of state officials though the rights asserted by the complainants are strictly federal in origin. * * * There must be reluctance even greater when the rights are strictly local; jurisdiction having no other basis than the accidents of residence. * * * ' ". Chapman v. Trustees of Delaware State College, D.C., 101 F.Supp. 441, 443.

■ Furthermore there is no showing by the plaintiffs that they have been deprived of any of their constitutional or civil rights. The defendant school officials with no intent to discriminate, took such action as in their discretion the situation required. Such discretionary action is not subject to attack under the Civil Rights Act, 42 U.S.C.A. § 1981 et seq.

"Since these Civil Rights actions lie in the federal courts and defendants are usually state officials, there are involved 'delicate state-federal relationships,' Francis v. Lyman, 1 Cir., 1954, 16 F.2d 583, 588.

"In Stefanelli v. Minard, 1951, 342 U.S. 117, at pages 121–125, 72 S.Ct. 118, at page 122, 96 L.Ed. 138, Justice Frankfurter after pointing out the 'far-flung and undefined range' of questions of procedural due process under the Civil Rights Acts (342 U.S. at page 123, 72 S.Ct. at page 122) concludes with the enigmatic statement, 'To suggest these difficulties is to recognize their solution'. (342 U.S. at page 124, 72 S.Ct. at page 122).

"To protect this 'delicate state-federal relationship' some limits must be placed on the otherwise limitless sweep of the Civil Rights Act.

"A broad holding that all state officials enjoyed immunity would be an improper approach. If courts held that all state officials had immunity from liability under Civil Rights actions for all acts done or committed within the ostensible scope of their authority, this would practically constitute a judicial repeal of the Civil Rights Act. Repeal is the responsibility of Congress, not the courts.

"Immunity for Discretionary Acts

"The approach of granting immunity to government officials for discretionary acts done within the

scope of their authority, seems a proper one. Without the presence of a particular discriminatory intent they have no liability in any event. This approach says we will not inquire, subjectively—into their state of mind—where they are exercising a discretionary function." Hoffman v. Halden, 9 Cir., 268 F.2d 280, 299.

Upon a review of all the testimony, I find in my discretion that the plaintiffs are not entitled to a preliminary injunction. It is therefore

Ordered that the plaintiffs' motion for a preliminary injunction be and the same is hereby denied.