Earl LANE

v.

Hon. John J. McDEVITT, III, Arlen Specter, John P. Mason, Edward Friedman.

Civ. A. No. 40317.

United States District Court
E. D. Pennsylvania.

May 24, 1966.

Lois Forer, Philadelphia, Pa., for plaintiff.

John Mattioni, Philadelphia, Pa., for Hon. John J. McDevitt, III.

Michael Rotko, Philadelphia, Pa., for Arlen Specter, John P. Mason, and Edward Friedman.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

LUONGO, District Judge.

This is an action under the Civil Rights Act to enjoin a criminal prosecution presently under way in the state court.

The power of this Court to issue an injunction under these circumstances is not free from doubt. 28 United States Code, Section 2283, prohibits injunction of state court proceedings except where expressly authorized by law.

In Dombrowski v. Pfister, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22, the Supreme Court reserved the question whether the Civil Rights Act, 42 United States Code, Section 1983, grants such express authorization.

While the Supreme Court has not ruled specifically on this question, the Court of Appeals for this Circuit appears to have. In Cooper v. Hutchinson, 184 F.2d 119, it was held that the reference in Section 1983 of Title 42 is such an express authorization and confers the power to enjoin state court proceedings.

In the absence of a definitive expression to the contrary from the Supreme Court, I am bound by what appears to be the ruling of the Third Circuit, and I therefore proceed to a consideration of the merits of plaintiff's claim.

Mr. Lane's claim is made up of two parts. The first part is that which we may characterize generally as complaint of deprivation or denial of due process, and the second part consists of an attack upon the state statute under which Mr. Lane's prosecution in the state court is laid, the attack being that the state statute is unconstitutional for vagueness.

I will treat the second aspect first. To the extent that in this proceeding there is sought a declaration of the unconstitutionality of the state statute, that is beyond my power.

Title 28, United States Code, Section 2281, provides that the constitutionality of state statutes may be determined only by a three-judge court.

Counsel for plaintiff were aware of that provision but chose nevertheless to proceed by motion for injunction to a single-judge court.

In counsels' memorandum of law, they have frankly conceded that in any event it would be premature to judge the constitutionality of the state statute, since it has not yet been interpreted by the state court.

In any event, I have not been asked to convene or to seek the convening of a three-judge court under Section 2281, and I must, therefore, consider myself without power to deal with the alleged unconstitutionality of the state statute under which Mr. Lane's indictments were had.

I will proceed now to the category of charges of deprivation of due process. Those charges are based on certain alleged summary dispositions of various motions by the Trial Judge, upon certain summary dispositions of appeals from those rulings by the Trial Judge, by the appellate courts of Pennsylvania, upon the charge of exclusion of Negroes from the venire lists, and finally, the charge of exclusion of Negroes from the panel from which the jury was selected which is presently trying Mr. Lane.

Even assuming the power in the jurisdictional sense of this Court under the Civil Rights Act to enjoin state court proceedings once they have commenced, the delicate balance of the federal-state relation dictates restraint in the exercise of the power. This, I think, is the clear holding of Stefanelli v. Minard, 342 U.S. 117, 72 S.Ct. 118, 96 L.Ed. 138.

The power should be sparingly used and then only to prevent manifest injustice to restrain proceedings which

may be said to be wholly lacking in any semblance of due process.

By that standard plaintiff's cause here is woefully lacking in substance. It is completely without merit. Several of the complaints made by Mr. Lane do not rise above the level of simple trial errors, assuming them to be errors at all, which trial errors are subject to review in the normal appellate procedures available in the state system.

It has been charged that the resort that was had to the state appellate tribunals has been wholly ineffective by reason of an unwillingness or by reason of a summary disposition by the appellate tribunals of the appeals. I do not so understand the actions of the appellate courts.

In the appeals that have been taken, it is my understanding from a review of this record that the appeals were quashed on the ground that they were interlocutory.

It is a fundamental rule of law, of course, that the Federal Courts will not inquire into the state court procedures, that ultimately the only question that we ask from a constitutional point of view is whether the procedure used by the state is one which accords due process to the litigants. I cannot say that a refusal to entertain interlocutory appeals or rather to entertain appeals from the rulings complained of here amount to a denial of due process.

Now, in the category of complaints which may be included within the category of trial errors are the charges of "summary"—and I use the term "summary" in quotes—dismissal of Mr. Lane's petition for change of venue and the denial of Mr. Lane's motion for a severance of the numerous bills of indictment.

No evidence has been adduced before me as to the need for change of venue. I do not say this critically, for, indeed, had evidence been offered, it would very likely have been rejected.

Request for a change of venue is addressed largely to the discretion of the Trial Judge, and his ruling and the exercise of his discretion is to be considered and reviewed in the ultimate determination of whether a fair trial is obtainable in the community from which the jury is drawn. I would take it that a full and complete record in that regard could not be made without resort to the voir dire, once it has been determined to proceed without a change in venue.

From what has been presented and said at this hearing, I gather that evidence was presented to the Trial Judge on the basis of which the Trial Judge made a ruling. That evidence, I assume further, is a part of those proceedings, and the propriety of the Judge's ruling will be subject to review at the appropriate time.

Whether the Judge gave much or little time to the consideration of the petition is almost beside the point. In the final analysis, it will be the propriety of his ruling and not the amount of time that he spent in arriving at it which will be reviewed.

The same may be said for the charge of summary disposition of Mr. Lane's motion for severance. Whether the Judge ruled correctly or incorrectly can only be judged ultimately after the trial, after all the evidence has been adduced. Then only can a final determination be made as to whether the procedure so employed was so unfair and prejudicial as to constitute a lack of due process.

The charge of bias and prejudice against the Trial Judge again is one for review, at least in the first instance, by the state appellate courts.

I gather from what has been said here that the charge is not that the Trial Judge is prejudiced against Mr. Lane because he is a Negro, but rather that by reason of the Trial Judge's prior assignments to trials of other magistrates arising out of the same probe out of which Mr. Lane's indictments arose, that the Trial Judge has become, in some way, predisposed to Mr. Lane's guilt.

The assignment of the trial of Mr. Lane to the care of this Trial Judge

is a matter of administration of court business, and until, by the conduct of the trial itself, such alleged prejudice has actually manifested itself, the Federal Courts may not, and in this instance this Federal Court will not, interfere.

Finally, the charges of exclusion of Negroes from the venire list and from the jury panel which has been selected to try Mr. Lane I find wholly lacking in substance. Factually, there is simply no basis for Mr. Lane's charge other than James Kelly's role.

Mr. Kelly is the assistant clerk of the Jury Selection Board, and prior to the magistrates probe he had apparently also been an assistant clerk of the Jury Selection Board. He was on leave of absence during some period of time and worked in some capacity as a member of the staff of the Special Attorney General in conducting the probe.

It is charged that by reason of that dual relationship, Kelly has managed in some way to exclude Negroes from the venire, list and from the panels from which Mr. Lane's jury was selected.

It is my understanding from the testimony of Mr. Tranchitella, the clerk of the Jury Selection Board, that there is an elaborate procedure by which names are selected in the first instance by judges of the state court, that thereafter questionnaires are sent out, and then at some stage of the proceeding, prospective jurors are called in for interviews by masters.

At no point in any part of the selection system is there an indication of the race of the prospective juror, except, as has been contended here, that guess that may be made by reason of the particular locality in which a prospective juror may live. Apart from the exercise of one's ingenuity in determining the probabilities of someone's race, there is no indication of race, and until a prospective juror appears for a personal interview before one of the four masters, there is no certain way of determining race, if, indeed, such a personal interview is a positive way of determining race.

In any event, it is my understanding that Mr. Kelly, as one of the four masters, has the burden to interview one-quarter of the prospective jurors. For me to come to a conclusion of a systematic exclusion by Mr. Kelly of Negroes from the venire list, I would have to speculate that at some period of time prior to the time of Mr. Lane's trial, Mr. Kelly undertook, as a result of his personal interviews, to eliminate Negroes from the prospective jurors lists.

There is no evidence on which I can make such a finding, and I specifically reject the invitation to do so.

It is curious in this regard—and I think it worthy of note—that it has been charged also that I should draw a conclusion that there has been an exclusion of Negroes from the venire list and from the panels from the fact that nine out of sixty persons called for the selection process here were Negroes, some 13 or 14 per cent, as compared to the 26 or 27 per cent of the population which the Negroes make up in Philadelphia.

I have not been presented with any evidence, and I doubt that the evidence could have been convincing had any been presented, as to what a normal makeup of any jury panel is or what the reasons for the disparity, if any, between the proportion of Negroes on a jury list, as compared to the proportion of Negroes in the general population.

I cannot find from the mere fact that there were nine out of sixty on the particular panels called here that there is evidence that there was a systematic attempt to exclude Negroes or that there was a specific attempt by Mr. Kelly to exclude Negroes from any list from which the jury to try Mr. Lane was to be selected.

There were nine out of sixty, as was pointed out, and I understand that one was stricken by Mr. Lane, by peremptory challenge, and three more were stricken by the Commonwealth by peremptory challenge.

The Commonwealth at one point offered to submit reasons why the peremptory challenges were exercised. It is

my understanding that a peremptory challenge is precisely that, one for which no cause or, good cause or bad cause may be attributed so long as the exercise is within the numbers granted; that this is a right accorded to the prosecution as much as to a defendant.

█ Peremptory challenge is precisely what it means and may not be questioned, and from the point of deprivation of constitutional rights, I will not and feel that I cannot inquire into the reasons for the Commonwealth's exercise of three peremptory challenges to eliminate three Negroes from the prospective panel.

My authority for this is Swain v. State of Alabama, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759.

Incidentally—and I note only in passing—I don't recall what the testimony was, if any, as to the reasons why the other five were stricken. I can only conclude that it was either by agreement or for cause, since neither party has brought specifically to my attention, or if they have I apologize for forgetting, the reasons for the striking of the other five of the nine Negroes.

By reason of my findings, it has not become necessary for me to decide whether judicial immunity extends to a suit for injunction, and I expressly refrain from ruling on that very interesting point of law.

It has recently been determined by the full panel of the Court of Appeals for this Circuit, in Bauers, Jr. v. Heisel, Jr., 361 F.2d 581, decided May 19, 1966, that a Judge and prosecuting attorneys are immune from suits for damages under the Civil Rights Act arising from the conduct of their official duties. Whether such judicial immunity is applicable in a suit for injunction has not been decided, and in view of my findings of fact is not necessary for decision here.

█ I conclude on the basis of the Cooper v. Hutchinson case that this Court does have jurisdiction of the parties and of the subject matter. I conclude further that the plaintiff has not made out a case warranting the intervention of this Court for the issuance of a preliminary injunction to enjoin the criminal procedures.

I conclude that the motion for preliminary injunction should be, and it is ordered that it is, denied.