**Francis R. MATHERLY et al.**

v.

**William H. LAMB, District Attorney, et al.**

Civ. A. No. 76–833.

United States District Court, E. D. Pennsylvania.

May 19, 1976.

John F. Talierco, Downingtown, Pa., Michael S. Barranco, Asst. Public Defender, W. Robert Landis, Chester County, West Chester, Pa., Edward A. Savastio, Chester County, Upper Darby, Pa., Thomas R. Wilson, Chester County, Kennett Square, Pa., for plaintiffs.

Dist. Atty. William H. Lamb, Asst. Dist. Atty. William R. Muir, Jr., Chester County, West Chester, Pa., for defendants.

## MEMORANDUM AND ORDER

HUYETT, District Judge.

Plaintiffs, who are defendants in ongoing or imminent criminal prosecutions in the Court of Common Pleas of Chester County, have filed a civil rights complaint alleging various violations of their federal constitutional rights by defendants. The defendants are William Lamb, the Chester County District Attorney, and various Common Pleas Court Judges in Chester County. The complaint, filed on March 19, 1976, seeks a temporary restraining order and

permanent injunctive relief, ordering the defendant district attorney not to produce and the defendant judges not to permit Kenneth Daniel Howell to testify in criminal proceedings against the plaintiffs. Because we harbored grave doubts about the propriety, and even the power, of a federal court to enjoin conduct of state officials so closely associated with the state criminal process, and because plaintiff's oral jurisdictional allegations were transparently deficient, we refused to act on the motion at a hearing held on March 26, 1976, until our doubts were allayed.[1]

■ At the outset we note that the plaintiffs must surmount two formidable barriers in order for us to grant the requested injunctive relief directed to state officials. In the first place plaintiffs must satisfy us that the facts pleaded in the complaint implicate substantial federal constitutional rights and that they state a claim for relief under 42 U.S.C. § 1983. *See Hagans v. Lavine*, 415 U.S. 528, 536–38, 94 S.Ct. 1372, 1378–79, 39 L.Ed.2d 577, 587–88 (1974). Secondly, even if the complaint can withstand a motion to dismiss, the plaintiffs must convince us that, despite traditional restraints on the exercise or our equity powers, and despite the weighty interests of comity, we should exercise that discretionary power. *See Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971).[2]

Perhaps because there are eight plaintiffs and seven defendants and because the facts pertinent to each vary significantly, we have some difficulty sorting out the factual allegations of the complaint. In several instances the alleged violations of the plaintiffs' constitutional rights are pled with a modicum of specificity, and in others the allegations are so general as to fall short of established minimum standards of pleading civil rights complaints. *Rotolo v. Borough of Charleroi*, 532 F.2d 920 (3d Cir. 1976).

The central grievance, common to all plaintiffs and specifically alleged, is that the defendant District Attorney has in past criminal proceedings, and unless enjoined will in future criminal proceedings, produce as a Commonwealth witness Kenneth Daniel Howell, who was convicted by a jury of perjury in 1971. (Chester Co. Common Pleas Court, No. 240, Nov. Term 1970). Under Pennsylvania's Disqualification by Perjury statute, 19 P.S. § 682, a convicted perjurer is rendered incompetent to testify in judicial proceedings. Pennsylvania courts have construed the disqualification as attaching only upon entry of judgment of sentence, *Commonwealth v. Shadduck*, 168 Pa.Super. 376, 77 A.2d 673 (1951); *Commonwealth v. Mervin*, 20 Chester 319 (C.P. 1972), so that an unsentenced but convicted perjurer is competent to testify. *See also United States ex rel. Miller v. Rundle*, 270 F.Supp. 55 (E.D.Pa.1967). Howell, whose post-trial motions were denied and who did not appeal his conviction, is apparently deemed competent to testify by the defendant judges and District Attorney Lamb. The plaintiffs claim that all of the defendants refuse to take the necessary steps to sentence Howell, which would thereby render him incompetent to testify in the plaintiffs' criminal trials. In so doing, the plaintiffs maintain, the defendant state officials deprive them of equal protection of the

---

1. Plaintiffs' unamended original complaint contains no jurisdictional allegation. Indeed, it was not until the filing of their Second Memorandum of Law (Doc. # 10) that plaintiffs asserted any recognized ground for federal jurisdiction. They now claim that federal jurisdiction exists under 28 U.S.C. § 1343 and 28 U.S.C. § 2284. Inasmuch as plaintiffs are alleging that they have been deprived of their federal constitutional rights under color of state law it is evident that jurisdiction lies under 28 U.S.C. § 1343(3). Jurisdiction must, of course, be pleaded in the complaint, see Fed.R.Civ.P. 8(a), and subsequent oral or written reference to claimed sources of jurisdiction do not suf-

fice. We have not required the plaintiffs to amend their complaint, however, because of the alacrity with which this case has proceeded and because, in view of the disposition we make of the complaint, it would be a futile act.

2. Defendants erroneously contend that 28 U.S.C. § 2283 ousts us of jurisdiction. *Mitchum v. Foster*, 407 U.S. 225, 92 S.Ct. 2151, 32 L.Ed.2d 705 (1972), recognized actions brought under 42 U.S.C. § 1983 as an exception "expressly authorized by Act of Congress," to the general proscription of § 2283 against enjoining state proceedings.

laws and of the privileges and immunities of citizens of the United States secured to them by the Fourteenth Amendment.

█ Assuming the allegations of the complaint are true, we entertain doubt as to whether the actions of the defendants rise to the level of a constitutional violation. Certainly a state is not constitutionally required to declare convicted perjurers incompetent to testify. And it cannot be maintained that a state which elects to disqualify convicted perjurers from testifying may not constitutionally permit an unsentenced but convicted perjurer to testify. The only colorable federal constitutional claims, then, stem from the defendants' administration of this facially valid statute. The gist of the complaint seems to be that the defendants, by their calculated inaction, have arbitrarily refused to sentence Howell for a conviction that is now five years old because he is a useful and convenient informant and witness against Chester County defendants suspected of and charged with various theft crimes in Chester County. Though the plaintiffs have not articulated their legal contentions with great clarity, they seem to attack the defendants' use of witness Howell from two angles. On the one hand, they argue that the defendants' failure to sentence witness Howell despite the passage of five years since his conviction for perjury is state action that is so arbitrary and capricious as to violate the precepts of fair play embodied in the due process clause of the Fourteenth Amendment.[3] Alternatively, they argue that the defendants' administration of the Disqualification by Perjury Act runs afoul of the equal protection clause by reason of uneven treatment of criminal defendants. Having so construed this aspect of the complaint,

and without the benefit of adequate briefing, we cannot conclude at this stage that plaintiffs can "prove no set of facts in support of [their] claim which would entitle [them] to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80, 84 (1957).

█ But plaintiffs have not convinced us that, though their complaint can withstand a motion to dismiss, we should exercise our jurisdiction in this case. By asking us to enjoin the District Attorney and the Judges of the Court of Common Pleas of Chester County from using Howell as a witness in state criminal trials they collide squarely with the abstention doctrine of *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). *Younger* and its companion cases express the "fundamental policy against federal interference with state criminal prosecutions," 401 U.S. at 46, 91 S.Ct. at 751, 27 L.Ed.2d at 676, and they delineate the impact of the dual restraints of equity and comity on a federal court when it considers the propriety of enjoining state criminal proceedings. The traditional prerequisite for any exercise of its injunctive power—irreparable injury—is compounded in this context by the principle of comity, so that a federal court may not enjoin a state criminal proceeding except upon proof that irreparable harm, "both great and immediate," will result. 401 U.S. at 46, 91 S.Ct. at 751, 27 L.Ed.2d at 676. Thus sources of harm to federal plaintiffs that might be deemed "irreparable" in cases involving ordinary equitable relief are insufficient here. "Instead, the threat to the plaintiff's federally protected rights must be one that cannot be eliminated by his defense against a single criminal prosecution." 401 U.S. at 46, 91 S.Ct. at 751, 27

3. Plaintiffs couch their claim in terms of a deprivation of the "privileges and immunities granted to [them] under the 14th Amendment." Complaint, ¶ 12. The Fourteenth Amendment states that "[n]o State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States." One of the immunities of national citizenship is the assurance that no state will deprive a person of liberty without due process of law. Allegations of arbitrary and capricious conduct, not related to specific guarantees of the Bill of Rights, have traditionally been thought of as falling within the substantive branch of the due process guarantee. *See, e. g., Ham v. South Carolina*, 409 U.S. 524, 93 S.Ct. 848, 35 L.Ed.2d 46 (1973); *Stovall v. Denno*, 388 U.S. 293, 301–02, 87 S.Ct. 1967, 1972, 18 L.Ed.2d 1199, 1206 (1967). We have treated the complaint, therefore, as alleging a violation of plaintiffs' due process rights under color of state law.

L.Ed.2d at 677. Such a threat can only be found, said the Court, where prosecutorial bad faith or harassment is shown, 401 U.S. at 48–54, 91 S.Ct. at 752–55, 27 L.Ed.2d at 677–81, and perhaps in other "extraordinary circumstances." *Id.* at 53, 91 S.Ct. at 755, 27 L.Ed.2d at 680. In *Perez v. Ledesma,* 401 U.S. 82, 91 S.Ct. 674, 27 L.Ed.2d 701 (1971), a companion case to *Younger,* the Court succinctly emphasized the extremely narrow range of cases in which the federal courts may invoke their equitable powers to restrain state prosecutions:

> Only in cases of proven harassment or prosecutions undertaken by state officials in bad faith without hope of obtaining a valid conviction and perhaps in other extraordinary circumstances where irreparable injury can be shown is federal injunctive relief against pending state prosecutions appropriate. *Perez v. Ledesma,* 401 U.S. 82, 85, 91 S.Ct. 674, 677, 27 L.Ed.2d 701, 705 (1971).

In short, the policy of equitable restraint expressed in *Younger* will give way only where the federal plaintiff is "deprived of meaningful access to the state courts" for the adjudication of his federal constitutional rights. *Allee v. Medrano,* 416 U.S. 802, 835, 94 S.Ct. 2191, 2210, 40 L.Ed.2d 566, 592 (Burger, C. J., concurring).

■ It is true that our resolution of the merits of the issue would dispose, in a single proceeding, of an issue that might have to be raised separately by each plaintiff in his or her own defense of the pending criminal charges. But the strong policies embodied in the abstention doctrine are not so easily overcome. The focus of *Younger* is on preserving the ability of state defendants to vindicate in a single proceeding the federal constitutional rights which they claim have been infringed. The mere fact that the same assertedly unconstitutional actions by state officials affects many defendants does not automatically transform this into a case where federal injunctive intervention is warranted. There is no allegation in the complaint that the defendant District Attorney seeks by his use of witness Howell to make illicit use of the criminal process by seeking to attain other than a valid criminal conviction. Consequently, though there are pending multiple state criminal charges against multiple state defendants, this is not a case where they will be individually unable to vindicate their state and federal constitutional rights by defending the charges against themselves in a single proceeding and by testing the legal bases of possible convictions by way of direct appeals in the state courts. *Cf. Dombrowski v. Pfister,* 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965). Under the *Younger* doctrine, therefore, the plaintiffs are not threatened with irreparable injury that is both great and immediate. Rather, by relegating them to the customary procedure of litigating their constitutional defenses in the state courts, they are threatened with no more harm than is associated with the defense of any criminal charge. By raising all their claims in the state courts the plaintiffs have the opportunity to resolve in a single proceeding the same federal constitutional issue which they urge us to resolve in this collateral proceeding. The complaint simply fails to allege facts sufficient to bring the case within *Younger's* bad faith and harassment exception.

Plaintiffs would also have us characterize this case as falling within the "extraordinary circumstances" exception to *Younger.* The *Younger* Court allowed only the possibility that there would be such an exception where, for example, a state prosecuted a citizen under a statute that was "flagrantly and patently violative of express constitutional prohibitions in every clause, sentence and paragraph, and in whatever manner and against whomever an effort might be made to apply it." 401 U.S. at 53–54, 91 S.Ct. at 755, 27 L.Ed.2d at 681, quoting *Watson v. Buck,* 313 U.S. 387, 402, 61 S.Ct. 962, 967, 85 L.Ed. 1416, 1424 (1941). As for situations not involving attacks on the facial validity of criminal statutes, the Court without elaboration simply noted that "other unusual situations . . . might also arise." 401 U.S. at 54, 91 S.Ct. at 755, 27 L.Ed.2d at 681. In the recent case of *Kugler v. Helfant,* 421 U.S. 117, 95 S.Ct. 1524, 44 L.Ed.2d 15 (1975), the Supreme Court

reversed a decision of the Court of Appeals for the Third Circuit sitting en banc, which, though declining to enjoin an ongoing state criminal proceeding, did order the district court to hold an evidentiary hearing on the issue of whether the Justices of the New Jersey Supreme Court had coerced the seemingly incriminating grand jury testimony of a state trial judge and further ordered it to issue a declaratory judgment based on its findings of fact. The Third Circuit majority reasoned that the limited intrusion into the state criminal proceedings was justified by avoiding the possibility that the New Jersey state judiciary could not objectively resolve the coercion question, touching as it did upon the propriety of actions of justices on the state supreme court. "The highly unusual factual complex" in the *Helfant* case was thought to bring the case within the embrace of the ill-defined extraordinary circumstances exception. 500 F.2d 1188, 1197.

The Supreme Court unanimously reversed. Without attempting to delineate the contours of the extraordinary circumstances that might justify federal equitable intervention into state criminal proceedings, the Court admonished:

> Only if "extraordinary circumstances" render the state court incapable of fairly and fully adjudicating the federal issues before it, can there be any relaxation of the deference to be accorded to the state criminal process. 421 U.S. at 124, 95 S.Ct. at 1531, 44 L.Ed.2d at 24.

The Court stressed that a situation is not extraordinary for purposes of *Younger* merely because it presents a highly unusual fact situation. The extraordinary feature which *Younger* abstention contemplates as grounds for interfering with state criminal proceedings is the inability of the state tribunals to afford a meaningful opportunity to protect federal constitutional rights. *Id.* at 124 & n.4, 95 S.Ct. at 1531, 44 L.Ed.2d at 24.

The plaintiffs' federal claim is a highly unusual one, to be sure. But like the equally peculiar situation in *Helfant*, there is plainly no reason to believe that the state courts are incapable of fairly resolving the issues. Federal litigation of the constitutional issues would in all likelihood, immeasurably complicate these prosecutions and interfere with the prompt and fair resolution of this case which is certainly available in the state courts.

Plaintiffs contend, however, that their state remedies are wholly inadequate since, prior to filing this complaint, they sought and were denied writs of mandamus and prohibition from the Pennsylvania Supreme Court. Also at the time this action was filed there was pending in the Chester County courts a bill in equity seeking to enjoin the use of witness Howell. We can hardly construe the unexplained denial of extraordinary legal relief by the Pennsylvania Supreme Court as giving rise to the possibility that the state courts are "incapable of fairly and fully adjudicating the federal issues." The plaintiffs' applications were denied on February 7, 1976, in a per curiam order, unaccompanied by an opinion, with two justices dissenting. The order may reflect the observance of some procedural nicety of state law, or indeed even a state judicial policy against state appellate interference with ongoing state criminal trials. In any event it appears that the plaintiffs are still entitled to litigate their federal claims by defending against the charges or, if necessary, by state appellate review and writ of certiorari in the United States Supreme Court. Likewise, the fact that the plaintiffs' petition for an injunction, filed December 31, 1975, has not been acted upon by the Chester County courts affords us no basis for concluding that the doors of the Pennsylvania courts are effectively closed to their federal constitutional claims.

Plaintiffs also maintain that because they seek to enjoin only one aspect of impending state criminal trials, i. e., the use of witness Howell, the requested injunction would be less intrusive than a blanket injunction of the entire criminal trial. The Supreme Court, in case after case, has rejected the argument that piecemeal federal forays into ongoing or imminent state criminal

prosecutions are less offensive than wholesale displacement of the state's power to prosecute. In *Stefanelli v. Minard*, 342 U.S. 117, 72 S.Ct. 118, 96 L.Ed. 138 (1951), a defendant in state court sought to litigate in federal court the constitutionality of a search and seizure performed by the state police officers. Declining to recognize an exception to the general rule against enjoining state criminal proceedings, the Court observed:

> If we were to sanction this intervention, we would expose every State criminal prosecution to insupportable disruption. Every question of procedural due process of law—with its far-flung and undefined range—would invite a flanking movement against the system of State courts by resort to the federal forum, with review if need be to this Court, to determine the issue. 342 U.S. at 123, 72 S.Ct. at 121, 96 L.Ed. at 144.

*Perez v. Ledesma*, 401 U.S. 82, 91 S.Ct. 674, 27 L.Ed.2d 701 (1971), reaffirmed the principle that for purposes of *Younger* abstention there is no meaningful distinction between enjoining outright a state criminal proceeding and enjoining a collateral aspect of it. Upholding the constitutionality of a local obscenity ordinance and refusing to enjoin prosecutions brought under that law, a three-judge court nonetheless suppressed certain evidence seized by state officers. The Supreme Court reversed, on the authority of *Younger*:

> It is difficult to imagine a more disruptive interference with the operation of the state criminal process short of an injunction against all state proceedings. Even the three-judge court recognized that its judgment would effectively stifle the then-pending state criminal prosecution. . . . According to our holding in *Younger v. Harris*, supra, such federal interference with a state prosecution is improper. The propriety of arrests and the admissibility of evidence in state criminal prosecutions are ordinarily matters to be resolved by state tribunals, see *Stefanelli v. Minard* [342 U.S. 117, 72 S.Ct. 118, 96 L.Ed. 138 (1951)], subject, of course, to review by certiorari or appeal

in this Court or, in a proper case, on federal habeas corpus. 401 U.S. at 84, 91 S.Ct. at 676, 27 L.Ed.2d at 705 (citations omitted).

*See also Kugler v. Helfant*, 421 U.S. at 129–30, 95 S.Ct. at 1533, 44 L.Ed.2d at 27.

In sum, despite the novelty of the asserted unconstitutional conduct and despite the fact that numerous pending prosecutions pose the identical issue, this is a classic case for abstention. The propriety of the alleged circumvention of the Pennsylvania Disqualification by Perjury Act by defendants is an issue well-suited to disposition by the trial courts of Pennsylvania and if necessary by direct appeal in the state courts. The threatened harm to defendants is no more than is usually endured by persons accused of criminal conduct who must depend on the state courts to remedy what they believe to be unconstitutional conduct suffered at the hands of state officials. In addition, the orderly administration of justice would be hampered by bifurcating a criminal procedure that need not be so complicated. Since the effect of our abstention is, in effect, to deny forever to the plaintiffs a forum in the United States District Court under 28 U.S.C. § 1343(3), this aspect of the complaint must be dismissed.

■ One final problem remains. Paragraph 12 of the complaint is a grabbag of grievances against the named defendants and other non-parties. It is unclear whether the ten additional allegations of paragraph 12 are intended to set forth separate claims for relief or whether they are supportive of the convicted perjurer claim. Only three of the ten subparagraphs [12(e), 12(d), and 12(j)] relate to witness Howell, and we have construed them as further facts pled in support of that claim for relief. The other seven subparagraphs have no apparent relevance at all to the claim involving witness Howell, and they level other charges of unlawful conduct by defendants and others. If these subparagraphs were intended to state separate claims for relief, however, they clearly run afoul of the rudimentary pleading rules of

Fed.R.Civ.P. 8(a). Subparagraphs 12(a), (b), (e), (f), (g), (h), and (i) share the same fatal deficiencies. They are supported by no allegations of jurisdiction, they can hardly be deemed short, plain statements of a claim of entitlement to relief, and there is no demand whatever for relief calculated to remedy these particular grievances. We conclude, therefore, that the defendants' motion to dismiss these aspects of the complaint under Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted must also be sustained.[4]

---

4. We note that plaintiff Francis R. Matherly does allege in ¶ 12(h):

> That over the last six (6) years, the District Attorney of Chester County and the State Police of Pennsylvania have brought approximately 17 different criminal charges against the Plaintiff, Francis R. Matherly, all of which were dismissed either because of a violation of his constitutional rights or because there was insufficient evidence to make out a prima facie case.

Although subparagraph (h) might, if adequately pleaded, state a cognizable claim for relief, and might even contain the germ of a claim that would fall within the bad faith and harassment exception to *Younger*, we can scarcely take up this allegation on the strength of this complaint.