Lonnie McLUCAS, Rose Marie Smith, Warren Kimbro, George Edwards, Plaintiffs,

v.

Honorable Aaron J. PALMER, a Judge of the Superior Court of the State of Connecticut, Defendant.

Civ. No. 13593.

United States District Court
D. Connecticut.

Jan. 12, 1970.*

* Affirmed (2 Cir. 1970) (per curiam), slip op. 2939 (March 21, 1970; stays denied by Mr. Justice Harlan on June 15, 1970 and by Mr. Justice Brennan on June 16, 1970.

Theodore I. Koskoff, Bridgeport, Conn., for plaintiff McLucas.

L. Scott Melville, of Merchant, Melville, Spear & Seymour, Bridgeport, Conn., for plaintiff Smith.

George A. Johnson, New Haven, Conn., for plaintiff Kimbro.

W. Paul Flynn, of Kopkind & Flynn, New Haven, Conn., for plaintiff Edwards.

Arnold Markle, State's Atty. for New Haven County, and Denis Gaffney, Asst. State's Atty. for New Haven County, for defendant.

TIMBERS, Chief Judge:

### QUESTION PRESENTED

Plaintiffs, members of the Black Panther Party, are charged as defendants in criminal proceedings which have been pending for several months in the Superior Court of the State of Connecticut, New Haven County, with various crimes, including first degree murder, conspiracy to commit first degree murder, kidnapping resulting in death, aiding and abetting first degree murder and binding.

On November 7, 1969, in anticipation of the trial and other proceedings in the Superior Court in these cases, Honorable Aaron J. Palmer, a Judge of the Superior Court, entered an order, later modified on November 12, 1969, to regulate courthouse procedure.

Plaintiffs on December 16, 1969 filed a complaint in this Court seeking declaratory and injunctive relief to enjoin enforcement of the aforesaid order, or to halt the state court criminal proceedings while the order is in effect. Plaintiffs' motions in this Court, filed simultaneously with the complaint, to con-

vene a three-judge district court and for issuance of a temporary restraining order to enjoin enforcement of the order, or to halt the state court criminal proceedings while the order is in effect, present the threshold question of this Court's jurisdiction over the subject matter of the action.

After a hearing on December 17, 1969 at which counsel for all parties were fully heard and after considering plaintiffs' complaint, motions, exhibits and briefs by counsel for all parties, the Court concludes that it does not have jurisdiction over the subject matter of the action. Accordingly, plaintiffs' motions to convene a three-judge district court and for issuance of a temporary restraining order are denied; and the complaint is dismissed.

## PLAINTIFFS' CLAIMS AND RELIEF SOUGHT IN THIS COURT

Plaintiffs' verified complaint seeks the convening of a three-judge district court pursuant to 28 U.S.C. §§ 2281 and 2284 (1964) to declare invalid and to enjoin enforcement of the "Order for Courthouse Procedure", or to halt the state court criminal proceedings against plaintiffs, on the grounds that the order is unconstitutional on its face and as applied to plaintiffs and that its enforcement is causing irreparable harm to plaintiffs.

Each of the plaintiffs is a "black citizen" and a member of the Black Panther Party.

1. The record before this Court does not disclose the date or dates upon which the state criminal proceedings in question were instituted against each of the plaintiffs. The record does disclose that at least one of the plaintiffs was arrested May 21, 1969 upon a bench warrant charging him with first degree murder. For purposes of the present proceedings in this Court, however, it is sufficient to note, and the Court hereby finds, that the state criminal proceedings against each plaintiff were instituted in the Superior Court several months *before* plaintiffs' complaint was filed in this Court on December 16, 1969.

2. Judge Palmer's modified order entered November 12, 1969 reads as follows:

Plaintiffs, together with others, are co-defendants in criminal proceedings initiated by the State of Connecticut and presently pending in the Superior Court of the State of Connecticut, New Haven County.[1] Specifically, plaintiffs McLucas and Kimbro are charged with kidnapping resulting in death, kidnapping, first degree murder, conspiracy to commit murder, and binding (Conn.Gen.Stat. §§ 53–27, 53–9, 54–197, 53–19); plaintiff Edwards is charged with kidnapping resulting in death, kidnapping, aiding and abetting first degree murder, conspiracy to commit murder, and binding (Conn. Gen.Stat. §§ 53–27, 53–9, 54–196, 54–197, 53–19); plaintiff Smith is charged with kidnapping, aiding and abetting murder, conspiracy to commit murder, and binding (Conn.Gen.Stat. §§ 53–27, 53–9, 54–196, 54–197 and 53–19).

Defendant is the Honorable Aaron J. Palmer, a Judge of the Superior Court of the State of Connecticut.

The order in question issued by Judge Palmer on November 7, 1969, as modified November 12, inter alia, prohibits demonstrations within 500 feet of the courthouse, requires all persons except counsel and law enforcement personnel entering the courthouse to be searched for weapons, and bars participants in the case from giving interviews or making extrajudicial statements designed to disclose prejudicial matters about the cases.[2]

"COURTHOUSE PROCEDURE FOR THE FOLLOWING CASES NOW PENDING IN SUPERIOR COURT FOR NEW HAVEN COUNTY, STATE OF CONNECTICUT

STATE OF CONNECTICUT
VS.

| | |
|---|---|
| GEORGE SAMS, JR., | Docket #15671 |
| LONNIE McLUCAS | Docket #15672 |
| RORY B. HITHE | Docket #15673 |
| LANDON WILLIAMS | Docket #15674 |
| FRANCES CARTER | Docket #15675 |
| MARGARET HUDGINS | Docket #15676 |
| ROSE MARIE SMITH | Docket #15677 |
| LORRETTA LUCKES | Docket #15678 |
| WARREN KIMBRO | Docket #15679 |
| GEORGE EDWARDS | Docket #15680 |

On November 12, plaintiffs filed a motion before Judge Palmer in the Superior Court to vacate the order; no decision has been rendered on this motion, the court having reserved decision. Also on November 12, Judge Palmer denied

ERICKA HUGGINS     Docket #15681
BOBBY GEO. SEALE     Docket #15844

The Constitution of the United States and the State of Connecticut guarantee defendants in criminal cases due process of law and the right to a fair trial by an impartial jury. It is the duty of the trial court to see that every defendant receives all of his constitutional rights.

From the national attention attracted to this case resulting in extensive publicity in the news media and based upon the affidavit and leaflet attached hereto, the court is of the opinion that the following rules are necessary to a constitutionally guaranteed, orderly and fair trial by an impartial jury, and therefore orders:

### SECTION 1

The term courthouse as used here-in shall mean the State Courthouse, 121 Elm Street, New Haven, and any other building to which hearings in this case may be recessed.

All entrance ways, corridors and approaches to courtrooms, offices and other rooms in the Courthouse will be kept clear at all times for free access thereto by those using them in the course of their employment or those having business to transact therein.

### SECTION 2

No cameras, photographic, television, radio or sound equipment, including tape records, will be permitted in the Courthouse or upon the alleyways, parking lots, yards or grounds immediately surrounding said buildings. No sketches will be made in the Courthouse.

### SECTION 3

All persons except counsel for the State and their associates, counsel for the Defendants and their associates and law enforcement personnel seeking admission to the Courtroom shall submit voluntarily to a search of their persons for weapons before being admitted.

### SECTION 4

No one will enter the courtroom after a session has begun without permission of the Court, but must wait until the next recess. No one will leave the courtroom except at recess or adjournment except in an emergency. At noon recess and adjournment and at any other time when any of the prisoners are being removed, the spectators shall remain seated in the courtroom until the prisoners have had ample time to withdraw, and said spectators have been given permission to disperse.

### SECTION 5

No one except attorneys of record, their agents, court personnel, witnesses and jurors may handle exhibits except by order of the Court.

### SECTION 6

All lawyers participating in these cases, their assistants, office associates, staff members, investigators and employees under their supervision and control are forbidden to take part in interviews for publicity and from making extrajudicial statements which are designed, or which may reasonably be expected to result in, the disclosure of prejudicial matters about these cases from this date until such time as a final verdict is returned in these cases in open court.

### SECTION 7

The county medical examiner, jury commissioners, the Clerk of the Court, county sheriff, police officials and other law enforcement officers, employees of this court, all other persons employed in the Courthouse, their associates, deputies, assistants, staff members and personnel under their supervision and control are forbidden to participate in interview for publicity and from making extrajudicial statements about these cases from this date and until such time as a verdict in these cases is returned in open court.

### SECTION 8

All witnesses, persons subpoenaed to grand jury or court, jurors, and those persons summoned but excused from serving as jurors, are forbidden to participate in interviews for publicity and from making extrajudicial statements about this case from this date and until such time as a verdict in these cases is returned in open court.

### SECTION 9

Nothing in this order shall prohibit any witness from discussing any matter in connection with the case with any of the attorneys representing the defendants or the State, or any representative of such attorneys.

### SECTION 10

There shall be no demonstrations, pickets, parades or the like in the Courthouse, or within five hundred feet in any direction of the Courthouse from this date forward until such time as a verdict in these cases is returned in open court.

THE COURT

By _____

Palmer, J."

plaintiffs' motion for a stay of proceedings pending final determination by the state and federal courts of the legality of the order in question. On November 25, Chief Justice King of the Connecticut Supreme Court granted plaintiffs leave to file their petition for writs of mandamus and prohibition to require Judge Palmer to vacate the order in question; and simultaneously Chief Justice King dismissed the petition for lack of jurisdiction.

Plaintiffs allege that the aforementioned "Order for Courthouse Procedure" deprives them of their constitutional rights in various respects and threatens them with irreparable injury.

In addition to seeking declaratory and injunctive relief through the convening of a three-judge district court, plaintiffs seek a temporary restraining order pursuant to 28 U.S.C. § 2284(3) to enjoin enforcement of the order or, in the alternative, to halt the state court criminal proceedings against plaintiffs while the order is in effect.

### JURISDICTION INVOKED

Plaintiffs allege jurisdiction in this Court pursuant to 28 U.S.C. §§ 1343(3) and (4), 2201, 2202, 2281 (1964) and 42 U.S.C. §§ 1981 and 1983 (1964); and under the First, Fourth, Fifth, Sixth and Fourteenth Amendments to the Constitution of the United States.

### CLAIM OF THREE–JUDGE COURT JURISDICTION

The complaint in the instant case clearly does not allege grounds for convening a three-judge district court pursuant to 28 U.S.C. § 2281 (1964).

Section 2281, which is the only statutory basis for a three-judge district court, provides:

"An interlocutory or permanent injunction restraining the enforcement, operation or execution of any State statute by restraining the action of any officer of such State in the enforcement or execution of such statute or of an order made by an administrative board or commission acting under State statutes, shall not be granted by any district court or judge thereof upon the ground of the unconstitutionality of such statute unless the application therefor is heard and determined by a district court of three judges under section 2284 of this title."

Plaintiffs do not claim that any state statute under which they are being prosecuted is unconstitutional. At issue, rather, is the constitutionality of an order regulating courthouse procedure issued by a state court judge. Since the action of the state court judge in promulgating such order is entirely unrelated to the constitutionality of any state statute, the requirement for the convening of a three-judge court pursuant to § 2281, that the constitutionality of a state statute be drawn into question, has not been satisfied. Johnson v. Lee, 281 F.Supp. 650, 657 (D.Conn.1968), *plaintiffs' motion for a stay denied by Court of Appeals for the Second Circuit on February 19, 1968.*

Moreover, despite the ingenious argument of plaintiffs' counsel to the contrary, the Court holds that Judge Palmer's order here in question is not "an order made by an administrative board or commission acting under State statutes" within the meaning of § 2281; nor does invocation of the judicial power of the state pursuant to Article Fifth, Section 1, of the Connecticut Constitution of 1965 transform concededly valid judicial action into a statutory enactment for the purposes of § 2281.

The complaint, insofar as it seeks to have a three-judge district court convened pursuant to 28 U.S.C. § 2281 and a temporary restraining order issued pursuant to 28 U.S.C. § 2284(3), must be dismissed.

### CLAIM OF SINGLE–JUDGE COURT JURISDICTION

Although the complaint does not invoke the jurisdiction of this Court other than pursuant to the three-judge district court statute, the Court nevertheless construes the oral argument and brief of plain-

tiffs' counsel to invoke, in the alternative, the Court's jurisdiction as a single-judge court.

At the outset, an injunction to stay already commenced criminal proceedings in the Superior Court would appear to be barred by 28 U.S.C. § 2283 (1964) which provides:

"A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments."

*Cf.* Turner v. LaBelle, 251 F.Supp. 443, 446 (D.Conn.1966).

■ The prohibition of Section 2283 by its terms does not apply, however, where another Act of Congress grants an exception. And the question remains open whether the Civil Rights Act, 42 U.S.C. § 1983 (1964), here invoked by plaintiffs, authorizes such an exception. See Cameron v. Johnson, 381 U.S. 741 (1965); cf. Dombrowski v. Pfister, 380 U.S. 479, 484 n. 2 (1965). Moreover, assuming without deciding that Section 2283 does prohibit a federal court injunction enjoining state court proceedings already in progress, it would not bar the granting of declaratory relief independently of the request for injunctive relief against the enforcement of a state statute (if one were here involved). Zwickler v. Koota, 389 U.S. 241, 254–55 (1967).

For the reasons stated below, the Court does not believe it to be either necessary or appropriate to rest its decision upon the prohibition of Section 2283, and it expressly does not do so.

■■ By this seventh decade of the twentieth century, few principles are more firmly established in our federated system of government in this Country than the principle that the federal courts must not interfere with the administration of criminal justice by the state courts except in the most exceptional circumstances. In the instant case, this United States District Court most emphatically declines to interfere with an order issued by a Superior Court judge for the purpose of insuring proper and orderly administration of justice in connection with already commenced criminal proceedings in the Superior Court. Stefanelli v. Minard, 342 U.S. 117, 120 (1951); Douglas v. City of Jeannette, 319 U.S. 157, 163–64 (1943); Hall v. New York, 359 F.2d 26 (2 Cir. 1966), cert. denied, 385 U.S. 879 (1966). None of the circumstances noted in Zwickler v. Koota, *supra*, and Dombrowski v. Pfister, *supra*, exists in relation to the issues raised here. No irreparable injury will occur to plaintiffs if the state judge has acted improperly [3]; adequate remedy exists through the normal state appellate procedure and by eventual application to the United States Supreme Court if that becomes necessary and proper. As stated in Moss v. Hornig, 314 F.2d 89, 91 (2 Cir. 1963):

"Federal courts of equity have always been loathe to restrain criminal prosecutions by states, even on constitutional grounds, where all constitutional issues can be decided in the first instance as a matter of course by the state courts."

Moreover, the concluding language of the United States Supreme Court in Stefanelli v. Minard, *supra*, at 122–125, is particularly appropriate here:

"In Douglas v. City of Jeannette, supra, the Court, speaking through Chief Justice Stone, said:

'Congress, by its legislation, has adopted the policy, with certain well

---

3. If it were within the competence of this Court to say so, Judge Palmer's order strikes me as a commendable exercise of a trial court's plain duty to regulate procedure in pending criminal cases. See Sheppard v. Maxwell, 384 U.S. 333, 361, 363 (1966); Estes v. Texas, 381 U.S. 532, 540–41 (1965); United States v. Tijerina, 412 F.2d 661 (10 Cir. 1969), cert. denied, 396 U.S. 843 (1969). In fact, I have placed in effect certain of the provisions of Judge Palmer's order in connection with the trial of a criminal case presently pending before me in the District Court.

defined statutory exceptions, of leaving generally to the state courts the trial of criminal cases arising under state laws, subject to review by this Court of any federal questions involved. Hence, courts of equity in the exercise of their discretionary powers should conform to this policy by refusing to interfere with or embarrass threatened proceedings in state courts save in those exceptional cases which call for the interposition of a court of equity to prevent irreparable injury which is clear and imminent; * * *.' Id., at 163. No such irreparable injury, clear and imminent, is threatened here. At worst, the evidence sought to be suppressed may provide the basis for conviction of the petitioners in the New Jersey courts. Such a conviction, we have held, would not deprive them of due process of law. Wolf v. Colorado, [338 U.S. 25 (1949)].

If these considerations limit federal courts in restraining State prosecutions merely threatened, how much more cogent are they to prevent federal interference with proceedings once begun. If the federal equity power must refrain from staying State prosecutions outright to try the central question of the validity of the statute on which the prosecution is based, how much more reluctant must it be to intervene piecemeal to try collateral issues.

The consequences of exercising the equitable power here invoked are not the concern of a merely doctrinaire alertness to protect the proper sphere of the States in enforcing their criminal law. If we were to sanction this intervention, we would expose every State criminal prosecution to insupportable disruption. Every question of procedural due process of law—with its far-flung and undefined range— would invite a flanking movement against the system of State courts by resort to the federal forum, with review if need be to this Court, to determine the issue. Asserted unconstitutionality in the impaneling and selection of the grand and petit juries, in the failure to appoint counsel, in the admission of a confession, in the creation of an unfair trial atmosphere, in the misconduct of the trial court —all would provide ready opportunities, which conscientious counsel might be bound to employ, to subvert the orderly, effective prosecution of local crime in local courts. To suggest these difficulties is to recognize their solution.

Mr. Justice Holmes dealt with this problem in a situation especially appealing: 'The relation of the United States and the Courts of the United States to the States and the Courts of the States is a very delicate matter that has occupied the thoughts of statesmen and judges for a hundred years and can not be disposed of by a summary statement that justice requires me to cut red tape and to intervene.' Memorandum of Mr. Justice Holmes in 5 The Sacco-Vanzetti Case, Transcript of the Record (Henry Holt & Co., 1929) 5516. A proper respect for those relations requires that the judgment below be

Affirmed."

The current vitality of *Stefanelli* was recognized by the Court of Appeals for this Circuit as recently as 1966 in Hall v. New York, *supra*, at 28.

█ Finally, what this Court recently had occasion to say with respect to the function of the federal courts under the Civil Rights Act in reviewing litigants' unsuccessful results in state court *civil* litigation, applies *a fortiori* to state court criminal proceedings:

"There is abroad in the land a notion that the Civil Rights Act has vested in the federal courts the function of an Ombudsman—to review any grievance, no matter how petty, stemming from the aggrieved party's unsuccessful results in state court litigation. Nothing could be further from the Congressional purpose." (Jemzura

v. Belden, 281 F.Supp. 200, 206 (N.D. N.Y.1968)).

For these reasons, plaintiffs' motions to convene a three-judge district court pursuant to 28 U.S.C. §§ 2281 and 2284 and for issuance of a temporary restraining order pursuant to 28 U.S.C. § 2284(3) must be denied, and the complaint dismissed.

### ORDER

ORDERED that:

(1) Plaintiffs' motion to convene a three-judge district court is deied.

(2) Plaintiffs' motion for issuance of a temporary restraining order is denied.

(3) Plaintiffs' complaint is dismissed for lack of subject matter jurisdiction, but without costs.

The foregoing constitute the Court's findings of fact and conclusions of law pursuant to Rule 52(a), Fed.R.Civ.P.

The Court expresses its appreciation for the helpful arguments and briefs from able counsel for both sides.